705 A.2d 766

J.H.R., PLAINTIFF–RESPONDENT, v. BOARD OF EDUCATION
OF THE TOWNSHIP OF EAST BRUNSWICK,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 16, 1997—Decided January 20, 1998.

Before Judges PRESSLER, WALLACE and CARCHMAN.

*Martin R. Pachman,* attorneys for appellant (*Mr. Pachman* of counsel; *Lisa A. Thomas* on the brief)

*Stanton & Stieh*, attorneys for respondent (*Mark L. Stanton* of counsel; *Joseph J. Sena, Jr.* on the brief).

The opinion of the court was delivered by

CARCHMAN, J.S.C. (temporarily assigned).

J.N. is a thirteen-year-old profoundly disabled child suffering from neurological impairment, blindness and incontinence. He requires twenty-four hour care. Without question, because of his disabilities, he is entitled to a free education under the Individuals with Disabilities Education Act (IDEA), 20 *U.S.C.A.* §§ 1400–1491*o* and *N.J.S.A.* 18A:38–1, to be paid for by the Board of Education of his domicile.

Even though J.N. has resided with his maternal grandparents in East Brunswick for his entire life, defendant East Brunswick Board of Education (East Brunswick) petitioned the Commissioner of Education challenging J.N.'s domicile. East Brunswick asserted that the obligation to pay for J.N.'s education was the responsibility of the Edison Township Board of Education (Edison) because J.N.'s mother, plaintiff J.H.R. moved to Edison Township with her new husband. Even after plaintiff's marriage, J.N. continued to remain in East Brunswick.

Not content with simply resolving the issue of domicile as between East Brunswick and Edison, East Brunswick added another count to its petition—it sought reimbursement of tuition from plaintiff in the event Edison was determined to be responsible for the cost of J.N.'s education.[1] As a result of this challenge and her exposure to the loss of J.N.'s benefits under IDEA, plaintiff retained counsel and successfully defended East Brunswick's challenge before the Office of Administrative Law (OAL). Plaintiff incurred $15,000 in legal fees.[2]

---

[1] Ironically, J.N. is enrolled in the Lakeview School located in Edison, but his domicile remains East Brunswick.

[2] The parties have stipulated that the amount of the fees and nature of services were reasonable and necessary.

The OAL found that J.N. was domiciled in East Brunswick and that East Brunswick was responsible for the cost of J.N.'s education. The Commissioner of Education affirmed in December 1995. Thereafter, in May 1996, plaintiff commenced an action in the Law Division seeking reimbursement for attorneys' fees necessitated by plaintiff's defense of East Brunswick's claim for tuition reimbursement. East Brunswick filed a motion to dismiss plaintiff's complaint. Judge Douglas Wolfson in the Law Division denied defendant's motion. Thereafter, plaintiff filed a motion for summary judgment which Judge Wolfson granted and awarded attorneys' fees. East Brunswick appealed.

We conclude that 1) East Brunswick's action for tuition reimbursement from plaintiff places in issue J.N.'s right to a free education under IDEA; 2) the Superior Court has concurrent jurisdiction with the federal court to adjudicate fee actions under IDEA; and 3) plaintiff's claim was timely filed. Accordingly, we affirm.

## I.

In the proceedings before the OAL, the parties stipulated the relevant facts which we repeat:

J.N. was born on May 14, 1984, and since his birth, J.N. has lived with his maternal grandparents in East Brunswick. [Plaintiff] lived with her parents in East Brunswick when her son was born and she continued to live there until she remarried and moved to Edison in September 1993. J.N. continues to live with his maternal grandparents in East Brunswick while his mother and stepfather live in Edison.

J.N. has multiple disabilities. He is neurologically impaired, blind and incontinent, which requires him to wear diapers. He has a kidney disease called renal tubular acidosis which requires medical care including daily medicine. J.N. needs twenty-four-hour care.

J.N. is a classified student in the [East Brunswick's] school district, and has attended the Lakeview School in Edison since 1987. [East Brunswick] provides transportation to the school.

[Plaintiff] is in the U.S. Army Reserves on active duty. She has had personal medical problems since March 1992 and she may need further hospitalization and an operation. [Plaintiff's] husband is employed as a full-time superintendent for a garden apartment complex (approximately 900 apartments) in Edison and his job requires him to live on site and be on twenty-four-hour call. Although financially

[plaintiff] and her husband can support J.N., they cannot give him the extensive care he needs. According to [plaintiff], there are no day-care centers that will accept J.N. because of his problems. [Plaintiff] visits her son at her parents' home and sometimes takes him to Edison for the weekend or on trips.

As stated, J.N. lives with his maternal grandparents, and they provide him with twenty-four-hour care. J.N.'s school states that all of its contacts are with his grandparents; the grandparents have nurtured the child and provided all additional home instruction and therapy. The grandparents also support J.N., except that J.N.'s medical, prescription drug and dental bills are . covered by his parents' insurance policies. [Plaintiff] pays for some of J.N.'s clothes and his diapers.

[Plaintiff] is divorced from J.N.'s father and she has custody of their son. J.N.'s father contributes support payments which [plaintiff] puts into a bank account for J.N. [Plaintiff] has given her mother a power of attorney to take care of her son.

[Plaintiff] claimed her son as a dependent on her 1993 federal and state income tax forms. J.N. was claimed as a dependent by his maternal grandparents on their 1994 federal and state income tax forms.

When the East Brunswick Board found out in October 1994 that J.N. was living with his grandparents and his mother was living in Edison, it requested that [plaintiff] and her mother, P.H., complete its standard affidavit forms for pupils living apart from parents. The Brunswick Board initially received forms that were not signed, not notarized and not submitted in a timely manner. Representatives of the Brunswick Board met with [plaintiff] and P.H. regarding the domicile of J.N. on February 16, 1995.

Based on these facts, the OAL made conclusions of law which were adopted by the Commissioner:

I agree with the arguments of [plaintiff] and the Edison Board and I CON-CLUDE that the Brunswick Board is responsible for the free public education of J.N. pursuant to the provisions of *N.J.S.A.* 18A:38–1(b)(1). J.N. and his grandparents meet the criteria set forth in this statute. It was clearly established by the facts that J.N.'s grandparents are domiciled within East Brunswick's school district and have assumed all the obligations for J.N. relative to his school requirements, and that J.N. is not residing with them solely for the purpose of receiving a free public education in [East Brunswick]. Pursuant to the provisions of *N.J.S.A.* 18A:38–1(b)(1), it is not necessary that J.N.'s grandparents provide all of the financial support for J.N. gratis, and the facts in this case show that the grandparents do provide a substantial portion of the financial support for J.N. Also pursuant to the statute, I CONCLUDE that J.N.'s mother is not capable of providing care for him due to family hardship. [East Brunswick's] suggestion that [plaintiff] can secure day care for J.N. is unrealistic in light of his needs, and the facts clearly show that J.N. is living with his grandparents because of his disabilities and not simply for the convenience of his mother.

... J.N. lives with his grandparents because of his needs and not for the convenience of his grandparents.... [C]ustody is not a requirement pursuant to *N.J.S.A.* 18A:38–1(b)(1). As to [East Brunswick's] argument regarding the domi-

cile of [plaintiff], I agree that J.R.'s plans to move back to East Brunswick are vague and that she is currently domiciled in Edison.

The Commissioner adopted the findings and conclusions of the OAL and affirmed in December 1995. Neither party filed an appeal.

Plaintiff filed this independent action for attorneys' fees pursuant to the fee-shifting provisions of 20 *U.S.C.A.* § 1415(e)(4)(B) (1986), *amended by* 20 *U.S.C.A.* § 1415(i)(3)(B) (Supp.1997) (the fee-shifting statute). Plaintiff claimed that by seeking tuition reimbursement under these facts, East Brunswick had implicated IDEA. She asserted that she met the statutory threshold requirement of "prevailing party." East Brunswick first challenged the applicability of IDEA. Thereafter, East Brunswick asserted that the Superior Court was without jurisdiction to consider a federal statutory claim for attorneys' fees. Finally, it claimed that plaintiff's action for fees was filed out of time. The trial judge disagreed with East Brunswick, as do we.

## II.

We first address the issue of whether this matter falls within the scope of IDEA.[3] IDEA is designed to ensure that all children with disabilities have available to them a free appropriate public education. *Smith v. Indianapolis Public Schools*, 916 *F.Supp.* 872 (S.D.Ind.1995). Congress has stated that the purpose of IDEA is:

to assure that all children with disabilities have available to them ... a free appropriate public education, which emphasizes special education and related services designed to meet their unique needs, to assure that the rights of children with disabilities and their parents or guardians are protected, to assist States and

---

[3] Neither the Administrative Law Judge nor the Commissioner reached this issue. "Since I have concluded that the Brunswick [sic] Board is responsible for the education of J.N. pursuant to *N.J.S.A.* 18A:38–1(b)(1), it is not necessary for me to consider the tuition issue or whether IDEA is applicable in this matter." 96 *N.J.A.R.2d* (Edu) 285, 1995 WL 862990 (1995). "The Commissioner further concurs with the A.L.J. that ... it is not necessary to consider the tuition issue or whether the [IDEA] is applicable in this matter." *Ibid.*

localities to provide for the education of all children with disabilities, and to assess and assure the effectiveness of efforts to educate children with disabilities.

[*20 U.S.C.A.* § 1400(c) (1986), *amended by* 20 *U.S.C.A.* § 1400(d) (Supp.1997).]

In *In re the Adoption of Amendments to N.J.A.C. 6:28–2.10, 3.6 and 4.3,* 305 *N.J.Super.* 389, 702 *A.*2d 838 (App.Div.1997), (*In re Amendments* ), we recently commented on the relationship between the federal and state roles in implementing IDEA:

The IDEA (formerly the Education of All Handicapped children Act (EAHCA)), provides federal money to assist states and local agencies in educating handicapped children. *Hendrick Hudson Dist. Bd. of Educ. v. Rowley,* 458 *U.S.* 176, 179, 102 *S.Ct.* 3034, 3037, 73 *L.Ed.*2d 690, 695–96 (1982). Receipt of those funds is conditioned on a participating state's compliance with the IDEA's goals and requirements. *Lascari v. Board of Educ., Ramapo Indian Hills Reg'l Sch. Dist.,* 116 *N.J.* 30, 33–34, 560 *A.*2d 1180 (1989); *see also Hendrick Hudson Dist. Bd. of Educ. v. Rowley, supra,* 458 *U.S.* at 180–81, 102 *S.Ct.* at 3037–38, [73] *L.Ed.*2d at 696. New Jersey has elected to participate in the federal program. As such, it has enacted legislation, *N.J.S.A.* 18A:46–1 to –46, and adopted regulations, *N.J.A.C.* 6:28–1.1 to –12.1, that assure all handicapped children the right to a free appropriate public education (FAPE) as required by the IDEA. *N.J.A.C.* 6:28–1.1(b)(1).

[*In re Amendments, supra,* 305 *N.J.Super.* at 394, 702 *A.*2d 838 *see also Rabinowitz v. New Jersey State Bd. of Educ.,* 550 *F.Supp.* 481 (D.N.J.1982).]

To protect one's rights under IDEA, the legislation provides for an "impartial due process hearing" to be conducted by an educational agency designated by the State, whenever the school district proposes to change the placement of the child or refuses to provide a "free appropriate public education to the child." 20 *U.S.C.A.* § 1415(b) (1986), *amended by* 20 *U.S.C.A.* § 1415(b), § 1415(e), § 1415(f) (Supp.1997).

We recently described the process:

When a dispute arises between the board and the parents, either party has the right to resolve the matter through mediation and, thereafter, an "impartial due process hearing." 20 *U.S.C.A.* § 1415(b)(2), amended by Pub.L. No. 105–17, § 615(b)(5), § 615(e), § 615(f), 111 Stat. 88, 90, 91 (1997) (20 *U.S.C.A.* § 1415(b)(5), 1415(e), 1415(f) (1997)). Under the New Jersey regulations, when parents of a handicapped child are dissatisfied with his or her education, they have the right to request a mediation conference, *N.J.A.C.* 6:28–2.6, or to request a due-process hearing, *N.J.A.C.* 6:28–2.7. A party aggrieved by the due process hearing may bring a civil action in State or federal court. 20 *U.S.C.A.* § 1415(e)(2), amended by Pub.L. No. 105–17, § 615(i)(2)(A), 111 Stat. 92 (1997) (20 *U.S.C.A.* § 1415(i)(2)(A) (1997)).

[*In re Amendments, supra,* 305 *N.J.Super.* at 395, 702 *A.*2d 838.]

The issue before the OAL, while ostensibly a domicile dispute, became a dispute between the "Board and the parent[s]" as will be discussed, *infra* at IA.

The statute under which this proceeding was initiated by East Brunswick in the Office of Administrative Law, *N.J.S.A.* 18A:38–1, provides that a public school education shall be free to all students who are domiciled within the school district and who meet certain criteria provided under *N.J.S.A.* 18A:38–1(b)(1). Under that sub-section, "[i]f in the judgment of the board of education the evidence does not support the validity of the claim by the resident, the board may deny admission to the child" and collect an assessment of tuition from the resident. However, the resident has the right to contest that decision to the Commissioner and "[n]o child shall be denied admission during the pendency of" such proceedings. *Ibid.* If the evidence does not support the claim of the resident, then the Commissioner shall impose a pro-rated assessment of tuition against such residents. Generally, where an alleged handicapped child who falls within the protection of IDEA is involved, the issue is not that of residence but rather whether the child is disabled and, thus, qualifies for benefits under IDEA. *See, e.g., J.M. v. Freehold Tp. Bd. of Educ.,* 95 *N.J.A.R.*2d (Eds) 133, 1995 WL 373335 (1995) (Petitioner was not eligible for Free Appropriate Public Education (FAPE) under IDEA because the ALJ determined that petitioner's educational problems resulted from his drug abuse, not a mental or physical disability.); *B.B. v. Hillsborough Bd. of Educ.,* 94 *N.J.A.R.*2d (Eds) 71, 1994 WL 406538 (1994) (ALJ ruled that rebellious child (petitioner) did not qualify as educationally disabled and, thus, petitioner's parents were not eligible for tuition reimbursement and assessment costs under IDEA.). Unlike these cases where the issue of disability is contested, J.N.'s physical circumstances precluded any dispute as to his eligibility for relief under IDEA and *N.J.S.A.* 18A:38–1. The only question should have been which school board was going to pay for J.N.'s education.

The scope of the dispute was considerably expanded by East Brunswick because East Brunswick not only raised the question of which board had to pay but asserted a right to reimbursement by plaintiff. Thus, the question was raised as to whether, because of the dispute between two competing school boards, J.N. would be deprived of a free education. East Brunswick suggests that this is, nevertheless, not a dispute falling within the scope of IDEA, and, absent such nexus, plaintiff is not entitled to relief.

### A.

The fee-shifting provision of IDEA under which plaintiff brings her claim provides: "[i]n any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." [4]

The right to recover attorneys' fees under the fee-shifting statute extends to actions or proceedings which have been heard and resolved, as here, in administrative proceedings. *Moore v. District of Columbia,* 907 *F.*2d 165 (D.C.Cir.), *cert. denied,* 498 *U.S.* 998, 111 *S.Ct.* 556, 112 *L.Ed.*2d 563 (1990), *Field v. Haddonfield Bd. of Educ.,* 769 *F.Supp.* 1313 (D.N.J.1991). The right of recovery of fees belongs to the parents who are the "prevailing parties."

In determining the applicability of IDEA, we must first decide whether plaintiff's participation in the OAL action as respondent defending against a claim for tuition implicates IDEA.

*In Roxbury Tp. Bd. of Educ. v. West Milford Bd. of Educ.,* 283 *N.J.Super.* 505, 662 *A.*2d 976 (App.Div.1995), *certif. denied,* 143

---

[4] The fee-shifting provision, 20 *U.S.C.A.* § 1415(e)(4)(B) (1986) was amended and redesignated as 20 *U.S.C.A.* § 1415(i)(3)(B) (Supp.1997). The post-amendment provision substituted the phrase "parents of a child with a disability" for the prior phrase "parents or guardian of a handicapped child or youth." For the purposes of this appeal, we discern no distinguishable difference as J.N.'s "disability" or "handicap" is not in dispute.

*N.J.* 325, 670 *A*.2d 1066 (1996), we considered whether a "due process" action by a parent involving the emergent relief authority of the Department of Education to compel a school district to accept responsibility for an autistic child's education fell within the scope of IDEA, where the ultimate dispute was between competing school boards. Emergent relief was necessary because, unlike here, the school refused to keep the child enrolled during the pendency of the dispute. All parties agreed that the parents' emergent application fell within the scope of IDEA. After the school the child was attending agreed to maintain the child during the dispute between school boards, the parents withdrew their emergent application. As here, the issue then became a dispute between school boards as to which was required to pay. We affirmed the Law Division's award of attorneys' fees to the parents pursuant to the fee-shifting statute. We noted, in dictum, that "[e]ven if the only issue remaining before the ALJ was the question of which board(s) was (were) financially responsible, that issue by itself is sufficient to invoke the jurisdiction of IDEA." *Id.* at 517, 662 *A*.2d 976 (footnote omitted), citing *Rabinowitz v. New Jersey State Bd. of Educ.*, 550 *F.Supp.* 481 (D.N.J.1982). But, here, as in *Roxbury*, more was in issue than simply the child's domicile and *which* school board was responsible.

By joining plaintiff as a respondent and seeking the relief of assessment of tuition against her, East Brunswick placed J.N.'s right to a free education in issue. East Brunswick claims that instead of simply denying school attendance to J.N., as it has the right to do under *N.J.S.A.* 18A:38–1, it petitioned the Commissioner, permitted J.N. to continue to attend Lakeview and continued to pay for the costs of his education. Thus, it claims that it never denied the child a free public education during the pendency of its petition. It had also joined Edison as a respondent to its petition because, it asserts, that Edison would have been responsible to pay for J.N.'s education in the event the child was deemed to reside with his mother in Edison.

It is true that East Brunswick did not seek to avoid payment of J.N.'s education during the pendency of the action; nevertheless, it did choose to join plaintiff as a respondent and assert a claim against her as a respondent. In these circumstances, we conclude that East Brunswick's actions were gratuitous. J.N.'s need for an education protected by IDEA was never an issue and the right of J.N. to have a free education paid for by one of the school boards should never have been an issue. East Brunswick, by joining plaintiff, made it an issue.

Either East Brunswick or Edison was going to bear responsibility for the cost of J.N.'s education. Plaintiff could have been spared the necessity of defending a costly administrative proceeding by a stipulation that one board or the other would ultimately be responsible for the cost of education. If East Brunswick understood J.N.'s needs and rights, it need only have availed itself of the procedure we described in *Roxbury:*

> If West Milford desired to relieve J.K.'s parents of the financial burden of participating in the OAL hearing, it could have stipulated that J.K.'s placement costs would be paid, with the question of allocation between the boards to await the outcome of a contested case hearing before the Commissioner, and it could have withdrawn that portion of its ... letter in which it questioned the appropriateness of J.K.'s residential placement. That was not done, and, thus we find nothing in the record that relieved the parents of the challenge presented to them by West Milford's letter.
>
> [*Id.* at 516–17, 662 *A.*2d 976.]

We conclude that by joining plaintiff as a defendant and seeking tuition reimbursement where no question existed as to an IDEA protected education, East Brunswick implicated IDEA and its protections in this action.

East Brunswick suggests that implicating IDEA and ultimately awarding attorneys' fees when a school board contests domicile would "chill" a school board's willingness to legitimately challenge those who are not properly domiciled in a school district. The flaw in East Brunswick's argument is that such concerns are illusory, for there is no fee-shifting provision in *N.J.S.A.* 18A:38–1. Challenges to a student's domicile, absent IDEA, would not, under ordinary circumstances, expose a school board to fees. When one

challenges a student protected by IDEA, Congress has made a policy decision that, indeed, does expose such contest to the potential of fee-shifting. Congress recognized that benefits and protections had to be afforded handicapped children and their parents to insure that these children receive a quality education. The fee-shifting provision reflects Congress' intent that parties, including school boards, exhibit a chariness in challenging the rights of those protected by the statute. The fee-shifting provision and the broad application of the scope of IDEA are consistent not only with the Congressional objectives when the statute was originally promulgated, but also to ensure its continued vitality as a guardian of educational benefits for handicapped children. As noted in the legislative history appended to the most recent amendments to IDEA:

> In its 22 year life span, the Individuals with Disabilities Education Act has achieved many of the important goals it sought to achieve. Children with disabilities are for the most part well served in America's public and private school and are guaranteed the right in every State and outlying area to a free appropriate public education by law.

> The IDEA has been a very successful law. Prior to its implementation, approximately 1 million children with disabilities were denied education. The number of children with developmental disabilities in State institutions has declined by close to 90 percent. The number of young adults with disabilities enrolled in postsecondary education has tripled, and the unemployment rate for individuals with disabilities in their twenties is almost half that of their older counterparts.

> [H.R. 95, 105th Cong., at 84 (1997), U.S.Code Cong. & Admin.News 1997 at 78, 81.]

In order to achieve these objectives and meet these goals, Congress was required to balance the competing interests of the school board in protecting the rights of the taxpayers and the interests of the parents of a disabled child in insuring that the rights afforded by IDEA to both parents and children are protected. Congress acted to insure that the nature, cost and location of a handicapped child's education are comparable to every other child in a local system. Congressional response by enacting a fee-shifting provision chills neither party. To the contrary, it insures that neither party will hesitate or be economically constrained to advance the important interests to be protected.

## B.

■ Plaintiff's entitlement to attorneys' fees under the fee-shifting statute requires that she be the prevailing party. ("[T]he court ... may award reasonable attorneys' fees ... to the parent[ ] ... who is the prevailing party.")

To qualify as a "prevailing party," a party must prevail on a significant issue in the litigation. *New Jersey Citizen Action v. Riviera Motel Corp.*, 296 *N.J.Super.* 402, 686 *A.2d* 1265 (App.Div. 1997); *see also Hunter v. Trenton Housing Authority*, 304 *N.J.Super.* 70, 698 *A.2d* 25 (App.Div.1997). In *Field v. Haddonfield Bd. of Educ.*, 769 *F.Supp.* 1313 (D.N.J.1991), the District Court traced the evolution of defining a "prevailing party" for the purposes of awarding attorneys' fees:

Prior to the Supreme Court's decision in *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 *U.S.* 782, 109 *S.Ct.* 1486, 103 *L.Ed.2d* 866 (1989), courts were split over the applicable test to be employed in determining whether or not a party "prevailed" in an action for purposes of awarding attorneys fees. While the majority of courts required that a party succeed on a significant issue and receive some of the relief sought in the lawsuit, *see, e.g., Fast v. School Dist. [of City of Ladue]*, 723 [728] *F.2d* 1030, 1032–33 (8th Cir.1984) (*en banc* ), the Court of Appeals for the Fifth and Eleventh Circuits applied a narrower test, requiring that a party succeed on the central issue in the litigation and achieve the primary relief sought. *See, e.g., Simien v. San Antonio*, 809 *F.2d* 255, 258 (5th Cir.1987).

The Court in *Garland* adopted the former, "less demanding" test and noted that "the *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." *Garland*, 489 *U.S.* at 790, 109 *S.Ct.* at 1492 (emphasis in original)(citing *Hensley v. Eckerhart*, 461 *U.S.* 424, 103 *S.Ct.* 1933, 76 *L.Ed.2d* 40 (1983)).

In reversing the court of appeals' use of the "central issue" test, the Court held that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Id.*, 489 *U.S.* at 792–93, 109 *S.Ct.* at 1493. In particular, "[i]f the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind." *Id.*, 489 *U.S.* at 791–92, 109 *S.Ct.* at 1493 (quoting *Nadeau v. Helgemoe*, 581 *F.2d* 275, 278–79 (1st Cir.1978)). The Court reasoned that this approach is more in line with congressional intent, and that

the search for the 'central' and 'tangential' issues in the lawsuit, or for the 'primary,' as opposed to the 'secondary,' relief sought much like the search for

the golden fleece, distracts the district court from the primary purposes behind [the fee shifting provision] and is essentially unhelpful in defining the term 'prevailing party.'

*Id.*, 489 *U.S.* at 791, 109 *S.Ct.* at 1493. In sum, to be a prevailing party, the plaintiff's success must be more than purely technical or *de minimis*. *Id.*, 489 *U.S.* at 792, 109 *S.Ct.* at 1493.

[*Id.* at 1320–21.]

A determination that a parent is a prevailing party has been applied where a parent defended a decision on appeal. *Bernardsville Bd. of Educ. v. J.H.*, 42 *F*.3d 149 (3rd Cir.1994) (parents of disabled child who partially successfully *defended* appeal by Board of Education of award of reimbursement expenses were "prevailing parties" entitled to attorneys' fees); *And see Barlow–Gresham Union High Sch. Dist. No. 2 v. Mitchell*, 940 *F*.2d 1280 (9th Cir.1991) (parent is prevailing party where parent and school board settled their dispute prior to the due process hearing); *But see Leslie "E" v. Bethlehem Central Sch. Dist.*, 227 *A.D.*2d 72, 652 *N.Y.S.*2d 891 (1997) (absent a proceeding, petitioner cannot be deemed "prevailing party" entitled to fees).

Applying the *Garland* test to this case, we conclude that plaintiff, as a respondent, succeeded on a "significant issue" in the OAL litigation. We do not deem it significant that she prevailed as a respondent rather than a party seeking relief. We note Congress' careful use of "prevailing parties," rather than "plaintiff" or other words of qualification. If East Brunswick had prevailed as against plaintiff, J.N.'s federal and state right to a "free education" would have been impaired. We reiterate what we observed earlier. Plaintiff's involuntary involvement in the OAL proceeding was gratuitous; there was no legitimate reason for her being placed in a position requiring her to defend. We conclude that Congress intended, and the statute dictates, that East Brunswick should bear the cost of such defense.

We reject East Brunswick's argument that awarding plaintiff attorneys' fees equates to permitting a parent to compel a free education in any district that a parent deems appropriate. Nothing in our decision allowing attorneys' fees compels such a conclusion. IDEA carries with it the obligation to educate students

*residing* within a district and within the jurisdiction of a particular school board. 20 *U.S.C.A.* § 1415(a) (1986), *amended by* 20 *U.S.C.A.* § 1415(a) (Supp.1997); nothing we decide here impacts on that statutory mandate.

We conclude that plaintiff falls within the definition of "prevailing party" under the fee-shifting statute.

## III

■ East Brunswick asserts that the Superior Court lacked subject matter jurisdiction to consider plaintiff's independent action for attorneys' fees, claiming that such jurisdiction resides exclusively in the federal court. East Brunswick relies on the language of 20 *U.S.C.A.* § 1415(e)(4)(A) (1986), *amended by* 20 *U.S.C.A.* § 1415(i)(3)(A) (Supp.1997): "The district courts of the United States shall have jurisdiction of actions brought under this subsection without regard to the amount in controversy." East Brunswick's argument is premised on the view that 20 *U.S.C.A.* § 1415(e)(4)(A) (1986), *amended by* 20 *U.S.C.A.* § 1415(i)(3)(A) (Supp.1997) of the statute confers *exclusive* jurisdiction on the federal courts to make such awards to the exclusion of the state courts. East Brunswick points to the seemingly more expansive provision in 20 *U.S.C.A.* § 1415(e)(2) (1986), *amended by* 20 *U.S.C.A.* § 1415(i)(2)(A) (Supp.1997) which permits an aggrieved party to bring an action in a state or federal court arguing that by using more restrictive language in 20 *U.S.C.A.* § 1415(e)(4)(A) (1986), *amended by* 20 *U.S.C.A.* § 1415(i)(3)(A) (Supp.1997) Congress intended to limit the authority to award fees to the federal court.[5]

---

[5] 20 *U.S.C.A.* § 1415(e)(2) (1986), *amended by* 20 *U.S.C.A.* § 1415(i)(2)(A) (Supp.1997) provides, in part:

Any party aggrieved by the findings and decision made under subsection (b) of this section ... and any party aggrieved by the findings and decision under subsection (c) of this section, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or

We first acknowledge that proposition to which all parties subscribe— the administrative tribunal, i.e., the OAL is without jurisdiction to award attorneys' fees under IDEA. *Balsley v. North Hunterdon Reg'l Sch. Dist. Bd. of Ed.*, 117 *N.J.* 434, 446, 568 *A.*2d 895 (1990) (Commissioner of Education has no authority to award attorneys' fees for violation of education laws). The parties agree that a fee application may be brought in an "independent" judicial action by a party who prevailed in an administrative proceeding. *See Barlow–Gresham Union High School Dist. No. 2 v. Mitchell, supra,* 940 *F.*2d at 1284; *Moore v. Dist. of Columbia, supra,* 907 *F.*2d 165, *Field v. Haddonfield Bd. of Educ., supra,* 769 *F.Supp.* at 1319–20.

In determining whether Congress intended to grant to the federal courts the exclusive jurisdiction over an independent action for attorneys' fees under IDEA, we are mindful of the general rule that state and federal courts share concurrent jurisdiction over cases arising from federal statutes unless Congress determines otherwise. *Bennun v. Bd. or Governors of Rutgers,* 413 *F.Supp.* 1274, 1279 (D.N.J.1976) ("[S]tate courts of general jurisdiction have the power to exercise jurisdiction over cases arising under the Constitution, laws or treaties of the United States unless this power is expressly taken away by Congress."). Under our federal system,

> the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause. Under this system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.... "[I]f exclusive jurisdiction be neither express nor implied, the State courts have concurrent jurisdiction whenever, by their own constitution, they are competent to take it."
>
> [*Tafflin v. Levitt,* 493 *U.S.* 455, 458–59, 110 *S.Ct.* 792, 795, 107 *L.Ed.*2d 887, 895 (1990) (quoting *Claflin v. Houseman,* 93 *U.S.* 130, 136, 23 *L.Ed.* 833, 838 (1876)).]

In interpreting similar jurisdictional language in Title VII (42 *U.S.C.A.* § 2000E) that "[e]ach United States District Court ...

---

in a district court of the United States without regard to the amount in controversy.

shall have jurisdiction of actions brought under this subchapter." [42 *U.S.C.A.* § 2000E–5(f)(3) ], the United States Supreme Court stated: "[U]nlike a number of statutes in which Congress unequivocally stated that the jurisdiction of the federal courts is exclusive, Title VII contains no language that expressly confines jurisdiction to federal courts or ousts state courts of their presumptive jurisdiction. The omission of any such provision is strong, and arguably sufficient, evidence that Congress had no such intent." *Yellow Freight System, Inc. v. Donnelly*, 494 *U.S.* 820, 823, 110 *S.Ct.* 1566, 1568–69, 108 *L.Ed.*2d 834, 839–40 (1990). "To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest State courts of their presumptively concurrent jurisdiction." *Ibid. See, e.g.,* The Employee Retirement Income Security Act (ERISA) of 1974 29 *U.S.C.A.* § 1132(e)(1) which grants "exclusive jurisdiction of civil actions under this subchapter;" The Public health and Welfare Act 42 *U.S.C.A.* § 6972(a) ("any action under paragraph (a)(1) of this subsection shall be brought in a district court for the district in which the alleged violation occurred"); *Davis v. Sun Oil Co.,* 953 *F.Supp.* 890, 895 (S.D.Ohio 1996) (the use of the mandatory "shall" in 42 *U.S.C.A.* § 6972(a) does not confer exclusive jurisdiction on the federal court, disagreeing with a contrary holding in *Middlesex County Bd. of Chosen Freeholders v. New Jersey,* 645 *F.Supp.* 715, 719 (D.N.J.1986) and the Racketeer Influenced and Corrupt Organizations (RICO) Act 18 *U.S.C.A.* § 1964(c) granting concurrent civil jurisdiction while retaining exclusive federal jurisdiction for criminal violations. 18 *U.S.C.A.* § 3231); *and see* the statutes cited in *Tafflin v. Levitt,* 493 *U.S.* 455, 471, 110 *S.Ct.* 792, 801, 107 *L.Ed.*2d 887, 902 (1990) (Scalia, J., concurring).

The plain language of 20 *U.S.C.A.* § 1415(e)(4)(A) (1986), *amended by* 20 *U.S.C.A.* § 1415(i)(3)(A) (Supp.1997) ("The district courts of the United States shall have jurisdiction of actions brought under this subsection without regard to the amount in controversy.") supports concurrent jurisdiction. Additionally, the legislative history of IDEA both under its present name and as

the Education of the Handicapped Act (EHA), warrants the same conclusion.[6]

As enacted in 1975, IDEA contained no fee-shifting provisions and, in fact, 20 *U.S.C.A.* § 1415(e)(4)(A) (1986), *amended by* 20 *U.S.C.A.* § 1415(i)(3)(A) (Supp.1997), originally 20 *U.S.C.A.* § 1415(e)(4) (1975), was simply a general jurisdiction provision of the statute. While the district court, without question, maintained jurisdiction over cases involving federal questions, "the amount in controversy" was an issue requiring congressional attention. Until 1980, there did not exist a "minimum amount in controversy" requirement for district court jurisdiction over federal question cases. *See Historical and Statutory Notes,* 20 *U.S.C.A.* § 1415 (1986) As noted, the EHA renamed IDEA in 1990, was enacted in 1975 and originally contained the text of 20 *U.S.C.A.* § 1415(e)(4)(A) (1986), *amended by* 20 *U.S.C.A.* § 1415(i)(3)(A) (Supp.1997), as simply § (e)(4). *See Historical and Statutory Notes,* 20 *U.S.C.A.* § 1415 (1986). Subsequently, in 1986, the Act was amended, adding the fee-shifting statute, along with several other amendments dealing with attorneys' fees, 20 *U.S.C.A.* § 1415(e)(4)(C) to (G) (1986), *amended by* 20 *U.S.C.A.* § 1415(i)(3)(C) to (G) (Supp.1997), and redesignating the jurisdictional provision from "(e)(4)" to "(e)(4)(A)." *Ibid.* Thus, at the time IDEA was enacted, "(e)(4)" eliminated any "minimum amount in controversy" issue as a condition precedent to the exercise of jurisdiction by the federal courts over IDEA cases. This jurisdictional provision long pre-dated any congressional action regarding fee-shifting.[7]

An interpretation limiting jurisdiction of the fee-shifting provisions to the federal courts makes little practical sense. Under such analysis, a litigant exercising his or her rights under 20

---

[6] For ease of references, both EHA and IDEA will be referred to as the IDEA.

[7] 20 *U.S.C.A.* § 1415 was amended in 1997, including amendments involving fee-shifting. *Historical and Statutory Notes,* 20 *U.S.C.A.* § 1415 (1986). The amendments are not relevant to our consideration of the issue before us.

*U.S.C.A.* § 1415(e)(2) (1986), *amended by* 20 *U.S.C.A.* § 1415(i)(2)(A) (Supp.1997) and prosecuting a successful action in the state court would be required to commence an independent and separate action in a federal court under the fee-shifting statute simply to secure reasonable attorneys' fees for successfully prosecuting the state court action. Nothing in the language of the statute, legislative history or common sense compels such a result.[8]

To the extent that *Zipperer v. School Bd. of Seminole County, Fla.,* 111 *F.*3d 847, 851–52 (11th Cir.1997); *J.B. v. Essex–Caledonia Supervisory Union,* 943 *F.Supp.* 387, 390 (D.Vt.1996); and *Curtis K. v. Sioux City Community Sch. Dist.,* 895 *F.Supp.* 1197, 1210, 1217 (N.D.Iowa 1995) hold that the federal courts have "exclusive" jurisdiction over an award of attorneys' fees, we respectfully disagree. We consider the flaw in the reasoning leading to such holding to be a misreading of the relationship of jurisdictional provisions—20 *U.S.C.A.* § 1415(e)(4)(A) (1986), *amended by* 20 *U.S.C.A.* § 1415(i)(3)(A) (Supp.1997) and the fee-shifting statute. As we noted earlier, 20 *U.S.C.A.* § 1415(e)(4) (1975), *amended by* 20 *U.S.C.A.* § 1415(e)(4)(A) (1986), *amended by* 20 *U.S.C.A.* § 1415(i)(3)(B) (Supp.1997), predates the 1986 amendment to the statute creating the fee-shifting provision. At the time of the enactment of the jurisdiction provision, Congress could not have intended its application to a not yet adopted fee-shifting statute.

Additionally, the language in the fee-shifting statute, "[i]n any action or proceeding brought under this subsection" refers to an

---

[8] We note that such a suggested result is inconsistent with New Jersey's strong policy commitment to the "Entire Controversy Doctrine" requiring resolution of *all* issues in a single litigation. *Cogdell v. Hospital Center at Orange,* 116 *N.J.* 7, 560 *A.*2d 1169 (1989). Not only have the federal courts recognized the doctrine as part of the substantive law of this State, *Rycoline Products, Inc. v. C & W Unlimited,* 109 *F.*3d 883 (3d Cir.1997), but in an action brought pursuant to 20 *U.S.C.A.* § 1415(e)(2) (1986), *amended by* 20 *U.S.C.A.* § 1415(i)(2)(A) (Supp. 1997), the District Court held that the Entire Controversy Doctrine was applicable to a proceeding brought pursuant to 20 *U.S.C.A.* § 1415(b) (1986), *amended by* 20 *U.S.C.A.* § 1415(b), § 1415(e), § 1415(f) (Supp.1997). *D.K. v. Roseland Bd. of Educ.,* 903 *F.Supp.* 797 (D.N.J.1995).

action or proceeding brought pursuant to 20 *U.S.C.A.* § 1415(e). This is the only "action or proceeding" in which a court is involved.[9] Thus, during the court "action or proceeding" contemplated by 20 *U.S.C.A.* § 1415(e) (1986), *amended by* 20 *U.S.C.A.* § 1415(i)(2)(A) (Supp.1997) (an action which is cognizable in either state or federal court), a court after a determination of the rights of the parties and an adjudication of the appeal from the proceedings may award attorneys' fees as part of that action or proceeding. *See, e.g., Roxbury Tp. Bd. of Educ. v. West Milford Bd. of Educ., supra.* To conclude otherwise would negate any significance to the phrase "*in* any action or proceeding" (emphasis added). *See R.* 1:4–8(d) authorizing the award of fees for frivolous actions which mandates that the issue be raised "in the action."

The result should be no different where, as here, a litigant seeks to enforce his or her rights under the fee-shifting statute, and no "action or proceeding" is pending thus empowering the trial judge in the 20 *U.S.C.A.* § 1415(e)(2) (1986), *amended by* 20 *U.S.C.A.* § 1415(i)(2)(A) (Supp.1997) action from first determining the respective rights of the parties and then awarding attorneys' fees pursuant to the fee-shifting statute. Judicial economy and efficiency demand no less.

We conclude that the state court shares concurrent jurisdiction with the federal court in considering an application for attorneys' fees under the fee-shifting statute. We further conclude that a prevailing party under this section may maintain in an independent action in the state court to enforce a right to attorneys' fees incurred in the successful defense of administrative proceedings.

## IV.

■ East Brunswick argues that plaintiff is barred from recovery of attorneys' fees because her application was untimely. The

---

[9] The proceedings under 20 *U.S.C.A.* § 1415(a) through (d) (1986), *amended by* 20 *U.S.C.A.* § 1415(a) through (g) (Supp.1997) are administrative in nature and do not involve court proceedings.

Commissioner's decision was rendered on December 12, 1995 and the complaint for attorneys' fees was filed on May 1, 1996. Judge Wolfson rejected East Brunswick's argument that plaintiff should have filed the application within thirty days, concluding that plaintiff "could not file [her] request for attorneys' fees until the appeal period expires, because [she's] not a successful prevailing party until [she's] won, and all avenues of appeal are exhausted." While we cannot subscribe to the view that plaintiff's status as a "prevailing party" was perfected only after the appeal time had run, we do agree that there was no thirty-day limitation period on plaintiff's cause of action for fees.

The fee-shifting statute does not provide a limitations period for the filing of such actions. Where no limitation period is set forth in a federal statute, the federal courts will "borrow" and apply the most analogous local time limitation.[10] *Zipperer v. School Bd. of Seminole County, Fla., supra,* 111 *F*.3d at 851 (applying a four-year Florida statute of limitations period). *And see JSK v. Hendry County Sch. Bd.,* 941 *F*.2d 1563, 1570 n. 1 (11th Cir.1991) (the Supreme Court has held "that when Congress has failed to provide a statute of limitations for a federal cause of action, a court 'borrows' or 'absorbs' the local time limitation most analogous to the case at hand," quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 *U.S.* 350, 355, 111 *S.Ct.* 2773, 2778, 115 *L.Ed.*2d 321, 331 (1991)).

Where the state statute is inconsistent with the policies underlying the federal statute, the state limitations period will be rejected. *Zipperer v. School Bd. of Seminole County, Fla., supra,* 111 *F*.3d at 850. In *Zipperer,* the court rejected the federal thirty-day limitations period applicable to appeals from federal administrative hearings. *Id.* at 850–851.

---

[10] The enactment of the Uniform Statute of Limitations on Federal Claims, 28 *U.S.C.A.* § 1658 (1990), by its terms, is not retroactively applied to IDEA. ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.").

Two lines of cases appear to represent the divergent views regarding the issue of the appropriate limitation periods. The first represented by *Zipperer v. School Bd. of Seminole County, Fla., supra; J.B. v. Essex–Caledonia Supervisory Union, supra;* and *Curtis K. v. Sioux City Community Sch. Dist., supra* consider an application for fees under the fee-shifting statute to be an independent action and thus apply limitation provisions relevant to separate causes of action. For example, *Zipperer* applies Florida's four-year general statute of limitations, *Fla. Stat.* ch 95.11(3)(f); *Curtis K.* applies either the general five-year statute, *Iowa Code* § 614.1(4) or the two-year personal injury statute, *Iowa Code* § 614.1(2); while *J.B.* concludes that Vermont's six-year "catch-all" statute, 12 *V.S.A.* § 511 is applicable. The second line of cases represented by *Powers v. Indiana Dep't. of Educ.*, 61 *F.3d* 552 (7th Cir.1995) concludes that the attorney fee application is ancillary to the appeal under 20 *U.S.C.A.* § 1415(e)(2) (1986), *amended by* 20 *U.S.C.A.* § 1415(i)(2)(A) (Supp.1997) and, as such, has adopted shorter limitation periods consistent with appeals from administrative agencies.[11] Neither New Jersey courts nor the Third Circuit have identified a limitation period for actions for fees brought pursuant to the fee-shifting statute.

Attorneys' fees may be awarded when provided for by rule or statute. *R.* 4:42–9. Common to all of these applications is the presence of an underlying action and the use of motion practice

---

[11] *See, e.g., Amann v. Town of Stow,* 991 *F.*2d 929 (1st Cir.1993)(applying a thirty-day period for appeals of administrative decisions); *Spiegler v. District of Columbia,* 866 *F.*2d 461 (D.C.Cir.1989)(same); *Adler v. Education Dept.,* 760 *F.*2d 454 (2d Cir.1985)(applying a 120–day statutory limitations period for review of administrative decisions regarding children with disabilities); *Department of Educ. v. Carl D.,* 695 *F.*2d 1154 (9th Cir.1983)(applying a thirty-day period for appeals of administrative decisions). The Seventh Circuit has ruled on the applicable statute of limitations for suits brought for attorneys' fees under the IDEA. *See Reed v. Mokena Sch. Dist. No. 159,* 41 *F.*3d 1153 (7th Cir.1994)(applying a 120–day limitations period for review of an administrative decision under the Illinois School Code in a case solely for attorneys' fees); *Dell v. Board of Educ.,* 32 *F.*3d 1053 (7th Cir.1994)(applying the same Illinois statute in a case involving both educational expenses and attorneys' fees).

allowing for, in most cases, a summary adjudication of the fee issues within a short period of time. The action for fees, in the present factual context, is a new and independent action. Too short a period of time fails to reflect the realities of the practice of law and, while we ascribe to a policy of finality for litigations, no interest is served by requiring the filing of an action within such an abbreviated time period. To require the filing of such an action within thirty days is impractical, unfair and, most important, is inconsistent with the intent of IDEA.

> [T]he short statutes of limitations associated with appeals of administrative procedures, while appropriate when a child's Individualized Education Plan is at issue in a substantive appeal of an administrative determination, are too short to vindicate the underlying federal policies associated with the fee-claims provisions of the IDEA. *See, e.g., J.B. [By and Through C.B. v. Essex–Caledonia Supervisory Union,* 943 *F.Supp.* 387, 391 (D.Vt.1996) ] ("Congressional policy favors the protection of the educational rights of the [disabled]. A short statute of limitations in attorneys' fee claims would frustrate that policy.")
>
> [*Zipperer v. School Bd. of Seminole County, Fla., supra,* 111 *F.*3d at 851.]

New Jersey maintains a number of codified limitation periods, e.g., a one-year limitation period for libel and slander cases *N.J.S.A.* 2A:14–3; a two-year period for personal injury claims *N.J.S.A.* 2A:14–2 and a six-year provision for contract and other claims *N.J.S.A.* 2A:14–1. None of these limitation periods are appropriate for an independent action for attorneys' fees which is ancillary to an administrative proceeding. Additionally, we recognize New Jersey's strong policy of fostering and encouraging finality in litigated proceedings. At the other extreme, we recently interpreted our frivolous litigation statute and rule to impose a ten-day limitation period on applications for attorneys' fees in statutory "frivolous litigation" matters, *N.J.S.A.* 2A:15–59.1. *Czura v. Siegel,* 296 *N.J.Super.* 187, 190, 686 *A.*2d 390 (App.Div.1997). In addition, both the statute and our recently amended court rule, *R.* 1:4–8, require that the fee application be brought "in the action" itself. *R.* 1:4–8(b)(2). We recognize the various federal courts that have adopted a thirty-day limitation period, as we previously noted. Ten or thirty-day limitation periods, in our view, present too narrow a window of time to commence a new action especially when at the same time one is attempting to

absorb and counsel litigants regarding a decision of the Commissioner of Education which may or may not require other action or consideration. Our research has failed to disclose or identify an appropriate local New Jersey limitation of the rights of the parties to secure relief under the fee-shifting statute.

We prefer a more flexible approach. The Third Circuit provides persuasive guidance in *Bernardsville Bd. of Educ. v. J.H.*, 42 *F*.3d 149 (3rd Cir.1994), where the court addressed the limitation period for an action by parents seeking tuition and expense reimbursement and other relief under IDEA. The action was commenced two years after the child had been withdrawn from an inadequate educational facility. The court rejected the ninety-day limitation period for challenging a child's Individual Educational Plan and adopted a "reasonable time" standard as a limitations period for commencement of such an action. "The fact that here the regulations do not specify a time limitation within which to bring a due process hearing, as well as the very nature and social significance of the education of children with disabilities incline us to equitable considerations." *Id.* at 157. The court concluded that a two-year time delay was excessive commenting that even one year was also excessive in bringing the reimbursement action.

We conclude that the adoption of a "reasonable time" rule for the institution of independent actions for attorneys' fees where there is no underlying action pending or brought pursuant to 20 *U.S.C.A.* § 1415(b) (1986), *amended by* 20 *U.S.C.A.* § 1415(f) (Supp.1997) appropriately harmonizes competing policy considerations. It provides a standard which allows independent actions to proceed forward and protects the rights of the parties under IDEA while at the same time precluding the extension of litigation over too long a period of time. We join in the Third Circuit's view that an action brought in excess of one year probably does not meet the "reasonable time" standard. No interest is served by delaying the adjudication of recovery of attorneys' fees. The interests of the litigants, counsel and the public agency involved would be well-served by an expeditious resolution of these dis-

putes. We think such an extended period is inconsistent with the strong policy of finality of litigation.[12]

In the present case, the complaint for relief was filed on May 1, 1997, approximately four and one-half months after the agency decision.

Applying the "reasonable time" standard to the matter before us, we conclude that a delay of four or five months is within the standard, and plaintiff is not barred from pursuing her course of action under the Act.

The judgment of the Law Division awarding attorneys' fees pursuant to the fee-shifting statute is affirmed.

---

[12] *Oberti v. Board of Educ. of Clementon*, 1995 WL 428635 cited by defendant is an unreported Federal District Court opinion (Docket No. 91–2818, U.S. District Ct. decided July 17, 1995), suggesting that a thirty-day period applies. *Oberti* did not involve an *independent* action for attorney's fees but concerned an application for fees filed 2 and one-half years after judgment. The reasoning in *Oberti* is consistent with our holding here today and in *Czura v. Siegel, supra*.