778 A.2d 1124 (2001)
343 N.J. Super. 419
P.B.K. on Behalf of Minor Child E.Y., Petitioner-Respondent,
v.
BOARD OF EDUCATION OF THE BOROUGH OF TENAFLY, Respondent-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 2001.
Decided August 2, 2001.
*1125 Robert J. Merryman, Warren, argued the cause for appellant (Apruzzese, McDermott, Mastro & Murphy, attorneys; Mr. Merryman, of counsel and on the brief).
Michael J. Sprague argued the cause for respondent (Cillick & Sprague, attorneys; Mr. Sprague, of counsel and on the brief).
Donna M. Kaye argued the cause for amicus curiae New Jersey Schools Boards Association (Cynthia J. Jahn, attorney; Ms. Jahn, of counsel; Amy M. Fankhauser, on the brief).
John J. Farmer, Jr., Attorney General, attorney for respondent State Board of Education (Michael C. Walters, Deputy Attorney General, filed a statement in lieu of brief).
Before Judges STERN, COLLESTER and FALL.
The opinion of the court was delivered by COLLESTER, J.A.D.
The Tenafly Board of Education appeals from a final administrative determination of the State Board of Education entered on January 5, 2000, reversing the Commissioner of Education and concluding that Tenafly is required to provide a free public education to E.Y., who was residing in Tenafly with his uncle, P.B.K.
The salient facts at times pertinent to this appeal are that E.Y. was born in California and is a citizen of the United States. He lived with his parents in Seoul, South Korea until December 1996, when he was sent to live with his aunt and uncle in Tenafly. The Tenafly Board of Education does not dispute P.B.K.'s domicile in Tenafly or E.Y.'s residence with P.B.K. It was also conceded that P.B.K. was supporting E.Y. without assistance from E.Y.'s parents.
At the time of his arrival in December 1996, E.Y. was fifteen years old. Within the same month P.B.K. sought to enroll his nephew in the ninth grade of the Tenafly School District. The school district gave him "school affidavit forms" for both P.B.K. and E.Y.'s parents to fill out and submit. In response to the question on the form as to why E.Y. was not living *1126 with his parents, the answer given both by P.B.K. and E.Y.'s father was that the parents resided in South Korea and E.Y. wanted to continue his education in the United States.
By letter of January 8, 1997, the Board of Education rejected E.Y.'s enrollment in the Tenafly school system because, "the desire to be educated in the United States is not a `personal or financial hardship' " under N.J.S.A. 18A:38-1(a). P.B.K. then petitioned the Commissioner of the Department of Education ("Commissioner"), seeking immediate access for E.Y. to the Tenafly Public School System pending appeal and final determination of his right to a free education within the school district. In accordance with N.J.S.A. 18A:38-1(b) E.Y. was enrolled in the Tenafly school on March 5, 1997, pending outcome of the petition. The Commissioner transferred the matter to the Office of Administrative Law for a hearing before an administrative law judge ("ALJ") as a contested case pursuant to N.J.S.A. 52:14B to -15 and N.J.S.A. 14F-1 to -13.
Prior to the scheduled hearing, the Tenafly Board of Education filed a motion for summary decision. After receipt of briefs from the parties, the ALJ denied Tenafly's motion. However, she elected to treat P.B.K.'s request for relief as a cross-motion for summary disposition and ordered that E.Y. be admitted to the Tenafly school district for a free public education.
The ALJ set forth the following findings and conclusions:
In this case[,] E.Y. has relatives domiciled in the United States who are willing to support him gratis, and [it is] this fact, more than a specific desire to go to school in Tenafly, that has dictated E.Y.'s choice of residence. Indeed, the fact that residency was established in Tenafly is purely happenstance. If his uncle had resided in Leonia, for example, E.Y. would have enrolled in that school district. Thus, I FIND E.Y. is not seeking to be educated in Tenafly solely for the purpose of receiving a free education within the district.
I FIND that E.Y. has met the requirements of the "affidavit student" law as articulated by the Commissioner in [Gunderson v. City of Brigantine Bd. of Educ., 95 N.J.A.R.2d (EDU) 39, 1994 WL 760538] E.Y. has no home, or possibility of school attendance, other than with the non-parent district resident and... such resident is for all intents and purposes the sole caretaker and supporter of the child. Ibid. It is undisputed that the petitioner has taken full charge of E.Y.'s welfare, and is currently in the process of obtaining guardianship over E.Y. As noted by petitioner, E.Y. would otherwise have no entitlement to an education anywhere in the U.S.. The spirit of the law in this case should control over the letter, for to hold otherwise would work a substantial injustice by harming a party the legislature never meant to penalize, and would subvert the state's interest in providing an education for its children. For the foregoing reasons, I CONCLUDE that E.Y. is entitled to admittance in the respondent's school district.
The Tenafly Board of Education filed exceptions to the ALJ decision with the Commissioner. On October 14, 1997 the Commissioner reversed the decision of the ALJ and directed that P.B.K. remit tuition pursuant to N.J.S.A. 18A:16-1 to the Tenafly Board of Education prorated to the first date of E.Y.'s attendance at a Tenafly school. The decision reads as follows:
Initially, the Commissioner concurs with the ALJ's and the Board's view that, since petitioner has not brought forth proof that he has gained legal custody of his nephew, then E.Y. cannot be found to be domiciled with him, since the *1127 domicile of an unemancipated minor follows that of the parent or guardian having legal control over him.
....
Here, both petitioner and E.Y.'s parents have specifically affirmed that E.Y. is living with his uncle because he "wants to continue his education in the United States." Further, as the Board noted in its exceptions, petitioner has not established, nor has he even claimed, that E.Y.'s parents, due to family or economic hardship, are not presently capable of supporting or providing care for E.Y.; instead, petitioner incorrectly argues that this provision of the statute is inapplicable in this matter. In this regard, the Commissioner is cognizant of the State Board's recent guidance concerning a petitioner's burden to demonstrate family or economic hardship in order to fulfill the requirements of the affidavit student statute. The State Board has specifically provided that,
... in order to satisfy that standard, the family or economic hardship must be real and demonstrable, evincing a current incapability on the part of [the minor child's] parents to support him or provide him care as the result of that hardship.[ ]
Accordingly, the initial decision of the ALJ determining that E.Y. is entitled to admittance in the Board's district is reversed. Further, with respect to the ALJ's statement that absent a conclusion that E.Y. is entitled to admittance in the Board's district, E.Y. "* * * would otherwise have no entitlement to an education anywhere in the U.S.[,]" the Commissioner notes that, should E.Y.'s parents wish to procure an education for their son in a school district in New Jersey, they may presumably do so, with the consent of the local board, by paying the necessary tuition, in accordance with N.J.S.A. 18A:38-3. Having determined, however, that petitioner fails to meet the relevant statutory requirements, the Commissioner cannot find that E.Y. is entitled to a free education... (citations omitted).
On November 12, 1997, P.B.K. appealed to the State Board of Education ("State Board"). While the appeal was pending, the Tenafly Board of Education wrote P.B.K. on February 2, 1998, demanding reimbursement for tuition in the amount of $9,560.94, in lieu of which E.Y. would be removed from school. On application of P B.K. the State Board stayed the decision of the Commissioner.
After the State Board granted P.B.K.'s motion to supplement the record on appeal, an affidavit of E.Y.'s father was provided stating that E.Y. had attended a private international school in Seoul until his father lost his job. The family of four lived off their savings for two years until the father became re-employed at a substantially lower salary. E.Y. matriculated from middle school, but the cost for further attendance at the international school was $15,000 per year. Since his father was making only $27,500 per year, he was unable to pay that sum for E.Y.'s schooling. The father further certified that,
The public high school in Seoul is not an option due to the fact that E.Y. is an American citizen and because he had attended the international middle school. At the international school, he had been instructed in English, and the curriculum and cultural environment were substantially different from that in the public school. E.Y. does not have the foundation in the Korean language necessary to succeed at an advanced educational level in the public school. His status as an American citizen is cause for harassment at the hands of students at the public school.
Thus, the family was faced with the prospect of not being able to provide our *1128 son with a proper education due to economic hardship. Although I am employed, my salary is not sufficient enough to be able to pay the international school tuition while providing for the other needs of my family. My wife does not work outside the home.
It never was our intention to have E.Y. attend high school in the United States. Had it not been for the extended period for which I was unemployed, and my inability to obtain a new job at my former salary, E.Y. would have been continuing his education at the international school. It was solely for the reason of economic hardship that E.Y. moved to Tenafly to live with his uncle, who has obtained legal guardianship of him. E.Y. continuously has been living in Tenafly since December 1996. Neither his mother nor I wanted to break up our family but we believed it was the only thing we could do.
Also submitted in supplementation of the record were Letters of Guardianship from the Bergen County Surrogate issued on June 11, 1997, prior to the decision of the Commissioner, appointing P.B.K. as guardian of E.Y. A form supplied to the Bergen County Surrogate indicated the father's assent to the appointment of P.B.K. as guardian for E.Y. The form was notarized on January 21, 1997, about a month after E.Y. came to live with P.B.K.
On January 5, 2000, the State Board reversed the Commissioner, reasoning that since P.B.K. had been domiciled in Tenafly during all relevant times and P.B.K. was appointed E.Y.'s legal guardian on June 11, 1997, the child was entitled to a free public education pursuant to N.J.S.A. 18A:38-1a. With regard to the time period between December 1996, when E.Y. began living with P.B.K. in Tenafly, and June 11, 1997, when P.B.K. was appointed E.Y.'s legal guardian, the State Board held:
Given the unique circumstances before us on the basis of the record as supplemented, we conclude that the petitioner has demonstrated that E.Y.'s parents were not capable of supporting or providing care for him due to a family or economic hardship and that E.Y. was not residing with the petitioner solely for the purpose of receiving a free public education in the district.
Consequently, on the basis of the record as supplemented on appeal, we conclude that E.Y. was entitled to a free public education in the Tenafly school district commencing in December 1996, when he began to live with the petitioner.
On appeal the Tenafly Board of Education presents the following issues for our consideration:

POINT IPETITIONER HAS FAILED TO DEMONSTRATE A "FAMILY OR ECONOMIC HARDSHIP" AS REQUIRED IN N.J.S.A. 18A:38-1(b).

POINT IIPETITIONER SHOULD NOT HAVE BEEN PERMITTED TO SUPPLEMENT THE RECORD IN THIS MATTER SINCE PETITIONER DID NOT OFFER NEW EVIDENCE THAT WAS NOT AVAILABLE AT THE TIME THE COMMISSIONER DECIDED THIS MATTER.

POINT IIITHE LETTER OF GUARDIANSHIP IS NOT DETERMINATIVE OF THE STUDENT'S RIGHT TO A FREE EDUCATION IN TENAFLY PUBLIC SCHOOLS.

POINT IVAPPELLANT IS ENTITLED TO TUITION FOR THE STUDENT'S ATTENDANCE IN TENAFLY PUBLIC SCHOOLS.
By order of September 6, 2000, we granted the motion of the New Jersey School Boards Association ("NJSBA") to *1129 appear as amicus curiae. It submits the following arguments to us:

POINT ITHE STATE BOARD OF EDUCATION'S CONCLUSION THAT THE PETITIONER DEMONSTRATED THAT E.Y.'S PARENTS WERE NOT CAPABLE OF SUPPORTING OR PROVIDING CARE FOR E.Y. IS NOT SUPPORTED BY THE FACTS. THIS CONCLUSION EVISCERATES THE STATUTORY STANDARD REGARDING HARDSHIP CONTRARY TO THE LEGISLATURE'S EFFORTS TO STRENGTHEN THE STATUTORY STANDARD.

POINT IIINDIVIDUAL ASSESSMENTS OF THE RELATIVE QUALITY OF EDUCATION RECEIVED IN ONE EDUCATIONAL SETTING VERSUS ANOTHER HAVE NO PLACE IN HARDSHIP DETERMINATIONS UNDER THE AFFIDAVIT PUPIL STATUTE. INSOFAR AS THE STATE BOARD OF EDUCATION HAS ERRONEOUSLY CREATED A NEW HARDSHIP STANDARD TAKING SUCH CONSIDERATIONS INTO ACCOUNT, THE STATE BOARD'S DECISION IS ARBITRARY AND CAPRICIOUS AND MUST BE REVERSED.

POINT IIIASSUMING, ARGUENDO, THAT A FAMILY OR ECONOMIC HARDSHIP EXISTED IN THE PRESENT CASE, EVEN UNDER THE DILUTED STATUTORY HARDSHIP STANDARD, E.Y. WAS NOT ENTITLED TO TUITION-FREE ENROLLMENT IN THE TENAFLY PUBLIC SCHOOL DISTRICT AS AN AFFIDAVIT PUPIL. THEREFORE, THE STATE BOARD'S DECISION MUST BE REVERSED.
We find no abuse of discretion in the decision of the State Board to permit P.B.K. to supplement the record. N.J.A.C. 6:21-1.9 permits supplementation "if at any time during the pendency of the appeal ... it appears that the evidence unadduced at the proceedings below may be material to the issues on appeal ..." Ample justification was given by the State Board:
In response to exceptions filed by the Tenafly Board to the report of our Legal Committee, we note that our review of this matter is not limited to consideration of the documents which the petitioner had provided to the Board at the time he was attempting to enroll E.Y. in the district. Rather, the issue before us is whetheron the basis of the entire record developed during these proceedingsE.Y. was entitled to a free public education in the Tenafly district under the standard set forth in N.J.S.A. 18A:38-1. We reiterate in that regard that the petitioner had not filed a motion for summary decision with the ALJ. Rather, the ALJ treated the petitioner's claim for relief as a motion for summary decision and determined on the basis of the record before [her] that the petitioner had established E.Y.'s entitlement to attend school in Tenafly. Hence, the petitioner had not submitted documents in support of such a motion during the proceedings in the Office of Administrative Law.
Moreover, in any event, N.J.A.C. 6:2-1.9 expressly authorizes the State Board to direct supplementation of the record if "[a]t any time during the pendency of the appeal ... it appears that evidence unadduced at the proceedings below may be material to the issues on appeal..." By decision dated April 1, 1998, we granted the petitioner's request to supplement the record with, inter alia, the affidavit of E.Y.'s father. Such document was, therefore, part of the record *1130 before us during our review of the merits of this case.
In considering Tenafly's substantive arguments, we focus on the governing statute, N.J.S.A. 18A:38-1, which provides as follows:
Public schools shall be free to the following persons over five and under twenty years of age.
a. Any person who is domiciled within the school district;
b. (1) Any person who is kept in the home of another person domiciled within the school district and is supported by such other person gratis as if he were such other person's own child, upon filing by such other person with the secretary of the school board of education of the district, if so required by the board, a sworn statement that he is domiciled within the district and is supporting the child gratis and will assume all personal obligations for the child relative to school requirements and that he intends so to keep and support the child for longer than merely through the school term, and a copy of a lease if a tenant, or a sworn statement by his landlord acknowledging his tenancy if residing as a tenant without a written lease, and upon filing by the child's parent or guardian with the secretary of the board of education a sworn statement that he is not capable of supporting or providing care for the child due to family or economic hardship and that the child is not residing with the resident of the district solely for the purpose of receiving a free public education within the district....
For purposes of subsection (a) the domicile of an unemancipated child is the domicile of the parent, custodian or guardian. Bd. of Educ. of Summit v. Millburn Twp. Bd. of Educ., 95 N.J. Admin.2d (EDU) 506 (1994); Clifton Bd. of Educ. v. Sauro, 96 N.J. Admin.2d (EDU) 497, 500 (1996) (citing Mansfield Twp. v. State Bd. of Educ., 101 N.J.L. 474, 478, 129 A. 765 (Sup.Ct.1925)). The Tenafly Board admits that E.Y. resided with P.B.K. beginning in December 1996. It does not challenge that Letters of Guardianship were granted to P.B.K. for E.Y. in June 1997, or that steps were taken toward formal guardianship as early as January 1997. Rather, the Tenafly Board contends that legal guardianship is not dispositive because guardianship was undertaken solely to enable E.Y. to attend the Tenafly public schools without cost.
No such factual findings were made by the State Board, and the record does not command such a conclusion. This is not an instance when a child and the parents or guardian establish a convenient residence in another school district to take advantage of academic or athletic programs. No other school in the United States existed for E.Y. other than the school district of his uncle and guardian.
Without specifically so stating, the Tenafly Board invites us to imply a fraudulent design by P.B.K. in obtaining the letters of guardianship for E.Y. We decline to do so. The record does not support fraud or deception. With E.Y.'s parents over half a world away, ample reason existed for a formal guardianship aside from satisfying the conditions of N.J.S.A. 18A:38-1(a).
We therefore concur with the determination of the State Board that P.B.K. was entitled to a free education in the Tenafly school district from and after June 11, 1997, the date of the issuance of Letters of Guardianship to P.B.K.
The remaining issue relates to the time frame between December 1996, when E.Y. *1131 began living with P.B.K. and the date of the formal guardianship. The State Board correctly noted that the issue is to be determined by N.J.S.A. 18A:38-1(b), which requires a showing by the child's parent or guardian that he or she is incapable of caring for the child due to "family or economic hardship" and that the child is not residing in the district solely for purposes of receiving a free public education in the district. See Gunderson, supra, 95 N.J. Admin.2d (EDU) 39 (1994).
The language "family or economic hardship" was added by amendment to N.J.S.A. 18A:38-1 by P.L.1993, c. 380. The statement by the sponsor to the amendment indicated that the purpose was "to ease the burden on local boards of education attempting to remove illegally enrolled students." Gunderson, supra, 95 N.J. Admin.2d (EDU) at 42. Clearly it was directed at instances where the student is living with a parent or guardian claiming to be but not actually domiciled in the school district or, alternatively, where a child is placed with a person other than the parent or guardian to obtain the benefit of a free education in that district. Certainly it did not address this situation where, accepting the Tenafly Board's argument, E.Y. will be left as a student without a school even though a resident domiciliary. Ibid.
Administrative case law tends to support the decision of the State Board. In D.K.S. and K.S.S., ex rel H.I.L. v. Bd. of Educ. of Fort Lee, Agency Dkt. No. 43-3/99, 1999 WL 609259, the Commissioner held that a family hardship which made it "difficult for the parents to properly provide care and stability for the child," qualified under the statute. In a case with a similar factual scenario the Commissioner also held that a Korean student qualified for a free education when his parents were unable to move to the United States and "provide [him with] the privileges of an American citizen including the intimate knowledge of American culture and heritage while they [lived] in Korea." R.C.P., ex rel A.S.K. v. Bd. of Educ. of the Ramapo Indian Hills Reg'l High Sch. Dist., Agency Dkt. No. 247-8/99, 2000 WL 869427.
In this instance E.Y.'s father certified that he lost his job, was unemployed for two years, and that when he finally obtained employment with a significant loss of income he could not provide for his family and keep E.Y. in the private international school. He also explained the significant problems E.Y. would face as a student in a Korean school.
We find that there is substantial credible evidence in the record to uphold the determination of the State Board that E.Y. qualified for a free education under N.J.S.A. 18A:31-1(b) as well as subsection (a) of the statute. R. 2:11-3(e)(1)(D); Dore v. Bedminster Twp. Bd. of Educ., 185 N.J.Super. 447, 453, 449 A.2d 547 (App. Div.1982).
The remaining arguments made in favor of reversal of the State Board are without merit. R. 2:11-3(e)(1)(E).
Affirmed.