976 A.2d 402 (2009)
409 N.J. Super. 149
A.M.S., on behalf of minor child, A.D.S., Petitioner-Respondent,
v.
BOARD OF EDUCATION OF the CITY OF MARGATE, Atlantic County, Respondent-Appellant, and
Board of Education of the Township of Jackson, Ocean County, Respondent-Respondent.
No. A-4193-07T2
Superior Court of New Jersey, Appellate Division.
Submitted March 16, 2009.
Decided August 6, 2009.
*403 Capehart & Scatchard, P.A., Mt. Laurel, attorneys for appellant (Robert A. Muccilli, on the brief).
Hinkle, Fingles & Prior, attorneys for respondent A.M.S. (Ira M. Fingles, on the brief).
Schwartz, Simon, Edelstein, Celso & Kessler, L.L.C., Morristown, attorneys for respondent Board of Education of the Township of Jackson (Marc H. Zitomer, of counsel and on the brief; Joseph L. Roselle, on the brief).
Anne Milgram, Attorney General, attorney for respondent State Board of Education (Cynthia Raymond Rimol, Deputy Attorney General, on the statement in lieu of brief).
Before JUDGES LISA, SAPP-PETERSON, and ALVAREZ.
The opinion of the court was delivered by
*404 SAPP-PETERSON, J.A.D.
Respondent, the Board of Education of the City of Margate (Board), appeals from the final decision of the State Board of Education (State Board) finding that A.D.S. is entitled to a free public education as a domiciled student of Margate and directing the Board to "take such steps as are necessary to provide [A.D.S.] with the free public education to which he is entitled by law." We affirm.
Petitioner, A.M.S., is the father of A.D.S. He adopted A.D.S. after marrying A.B., A.D.S.'s biological mother. When A.D.S. first attended school, the family was living in Jackson Township, and A.D.S. attended public school in that school district. In 2001, petitioner enlisted in the United States Army. After his enlistment, petitioner performed tours of duty in South Carolina, Arizona, Washington, Iraq, New Jersey and Germany. Petitioner's family accompanied him on a number of these assignments. On July 8, 2005, A.B. died suddenly while the family was living in Germany. Petitioner was afforded six weeks of bereavement leave and spent the time at a condominium (condo) owned by his parents that is located in Margate. Petitioner previously resided at the condo for a period of time after graduating from college in 1994. While there during his bereavement leave, he changed a number of documents, including his driver's license, insurance, and vehicle registration, to reflect the Margate address.
In September 2005, petitioner was assigned to Fort Monmouth. He moved to Eatontown but did not take A.D.S. at the time because he "wasn't able to give [A.D.S.] the attention that he needed." His parents, who lived in Yardley, Pennsylvania, agreed to temporarily care for A.D.S. until alternative arrangements could be made. They executed the requisite forms to secure free public education for A.D.S. as a non-resident student and enrolled him in the Pennsbury public school system in Yardley.
In executing the forms, petitioner's mother averred that she and her husband intended to care for A.D.S. continuously and not merely through the school year. However, she qualified her averment with handwritten statements on a number of the forms:
[A.D.S.]'s father, [petitioner], is in the military, and will be stationed at Ft. Monmouth, N.J. We are [A.D.S.]'s grandparents and taking care of him on a temporary basis. [Petitioner] is his father and guardian. He is supporting [A.D.S.] and responsible for his care. We are providing a temporary home and have [p]ower of [a]ttorney to make all decisions necessary for his well[-]being. [P.M.S.]
....
Father in military and will be living at Ft. Monmouth, N.J., in Sept. Mother died July 8, 2005. We, the grandparents, are caring for [A.D.S.] on a temporary basis. We have [p]ower of [a]ttorney to register [A.D.S.] for school and are caring for him until other arrangements can be made.
....
We are not guardians but do have [p]ower of [a]ttorney to register [A.D.S.] for school and to care for his needs.
Petitioner never relinquished his parental rights. During the period of time that A.D.S. lived with his grandparents, while petitioner was stationed at Fort Monmouth, he spent weekends with his father either in Eatontown or at the Margate condo.
A.D.S. and his grandparents spent the summer of 2006 in the Margate condo and petitioner visited them every weekend. At the beginning of the new school year, *405 A.D.S.'s grandparents attempted to enroll A.D.S. in the Margate school system. They were advised, in writing, by the Board's solicitor that A.D.S. could not attend the Margate school system because petitioner did not meet the residency requirements for A.D.S.'s enrollment. In October 2006, A.D.S.'s grandparents enrolled him, at their own expense, at the Bancroft NeuroHealth School in Haddonfield (Bancroft), as they were no longer able to provide the care he needed.
Petitioner appealed the Board's eligibility determination. The Board filed an answer and a counterclaim seeking reimbursement of tuition from A.M.S. "for the period of A.D.S.'s ineligible attendance...." The Commissioner transferred the matter to the Office of Administrative Law as a contested case for a hearing before an administrative law judge (ALJ).
At the hearing, the parties entered into a number of stipulations, including: (1) petitioner had not lived at the condo between January 1, 2003 and the date of the hearing "except from July 29, 2005 through September 9, 2005, and for several days during a two[-]week period while [petitioner] was on leave in the summer of 2004"; (2) while stationed at Fort Monmouth from September 2005 to December 2006, petitioner resided in Eatontown; (3) when reassigned to Fort Meade in December 2006, petitioner moved to Maryland, where he was still residing at the time of the hearing in May 2007; and (4) petitioner did not own the condo and had never paid any taxes or utility bills for the condo. It was also stipulated that petitioner's driver's license, vehicle registration and title, referenced the Margate address and that his DOD (Department of Defense) Form 2058 designated Margate as his domicile.[1]
Subsequent to the hearing, the ALJ issued an initial decision finding that petitioner is domiciled in Margate based upon the "numerous steps" he took "that manifest a desire to make Margate his domicile." The ALJ specifically found that between July 2005, after the death of his wife, and September 10, 2005, petitioner took "decisive action to establish domicile" at his parents' condo, as evidenced by such proofs as his voter registration, bank accounts, driver's license, and the title, registration and insurance for his vehicle. The ALJ also noted that not only did petitioner take steps locally to establish Margate as his domicile but that "[h]e filed [DOD] Form 2058 with the Army, formally declaring... Margate as his legal residence." Finally, the ALJ observed that petitioner was summoned for jury duty and that the notice was mailed to the Margate address.
Quoting Roxbury Twp. v. Heydt, 6 N.J. Tax 73 (Tax 1983), the ALJ rejected the Board's argument that petitioner had not established domicile at the Margate address because he had not maintained a physical presence at the condo:
Margate argues that [petitioner] could not establish domicile because he lacked a physical presence at the condo. Margate notes that [petitioner]'s physical occupation of the premises was essentially limited to the period July 29 through September 10, 2005. Margate points out that [petitioner] has spent far longer time periods physically occupying premises in Washington State, Eatontown, New Jersey, and Fort Meade, Maryland.
This issue was dealt with in [Roxbury, supra, 6 N.J. Tax at 77]:

*406 The duration of Major Heydt's presence in New Jersey is not a significant factor in determining his domicile, since a member of the Armed Forces has little control over the length of time he may spend in any jurisdiction before being transferred elsewhere. Major Heydt exhibited the requisite intent to adopt a New Jersey domicile, and that intent coincided with his physical presence in New Jersey.
The same test applies here. During the limited time [petitioner] had to establish domicile, he took the steps necessary to manifest his intention to do so in Margate.
The ALJ also found that petitioner's affirmative efforts to establish domicile in Margate mooted the question of whether Jackson Township is his domicile and required dismissal of petitioner's petition against Jackson Township.[2]
Although the ALJ concluded that petitioner is domiciled in Margate, he none-theless determined that A.D.S. is domiciled in Yardley, Pennsylvania with his grandparents. He acknowledged the general rule that "[a] child's domicile is normally that of his or her parents." Somerville Bd. of Educ. v. Manville Bd. of Educ., 332 N.J.Super. 6, 12, 752 A.2d 793 (App.Div. 2000), aff'd, 167 N.J. 55, 768 A.2d 779 (2001). He found that "because [petitioner] is serving on active duty in the Army, [he] granted control over A.D.S. to his parents," who cared for A.D.S. daily and also assumed financial responsibility for A.D.S.'s tuition through the first year of his placement at Bancroft. He concluded that these facts were sufficient to transfer the domicile of A.D.S. from that of his father in Margate to that of his grandparents in Yardley, Pennsylvania. The ALJ believed that this result was compelled by our decision in J.H.R. v. Bd. of Educ. of the Twp. of East Brunswick, 308 N.J.Super. 100, 705 A.2d 766 (App.Div.1998), and therefore concluded:
Absent clarification from the Commissioner, East Brunswick stands for the proposition that when a soldier turns over the care of his child to the child's grandparents while he serves on active duty, and the grandparents provide the support for the child set forth in N.J.S.A. 18A:38-1(b)1, it is the grandparents' school district and not the district, of the soldier's domicile, that bears the responsibility to educate the child.
The ALJ, however, was troubled by the notion that a serviceperson's child, other than a child of a national guardsperson or reservist,[3] "is penalized because of the sacrifice his father is making for his country[,]" and expressed hope that the Commissioner would provide further clarification.
The Commissioner adopted the ALJ's factual finding and legal conclusion that Margate is petitioner's domicile but disagreed that A.D.S.'s domicile was that of his grandparents in Pennsylvania. The Commissioner noted:

*407 [A]lthough the daily care and supervision of A.D.S. was entrusted to his grandparents after his mother's death due to the physical absence of his sole surviving parentthat arrangement was from its outset clearly delineated as temporary in nature, a stopgap measure to provide for the child until appropriate long-term arrangements could be made....
Additionally, the Commissioner considered that petitioner "has at all times retained guardianship and legal custody of A.D.S. and has never ceased to be actively involved in his welfare...." Based upon these findings, the Commissioner reasoned that there was no basis to "conclude that A.D.S.'s legal domicile has shifted from that of his father to that of his grandparents."
Further, the Commissioner disagreed that the East Brunswick decision, upon which the ALJ relied, compelled the conclusion that A.D.S. was domiciled in Pennsylvania with his grandparents:
[T]he law plainly contemplates that students claiming domicile or temporary residence will most likely be living with a parent in the district, while those living with a caretaker due to legitimate family or economic hardship will likely seek to attend school in the caretaker's district rather than in the district of domicile, as was the case in East Brunswick.[] This presumption, though, will not hold true in all cases, and certainly cannot be employed to preclude the child of a New Jersey domiciliary from entitlement to education in any New Jersey district because his or her circumstances do not exactly fit one of the situations enumerated in [the] statute or rule. To the contrary, the ability of a child to attend school in a district other than that of his or her legal domicile is granted by the Legislature in the best interest of the studentnot as a means by which a local district board of education can refuse to educate a domiciled child who, due to unique circumstances, neither resides in the district nor qualifies for education elsewhere in the state pursuant to N.J.S.A. 18A:38-1 and its attendant rules or related statutes.
Such is the situation presented by this matter. Here, petitioner is a New Jersey domiciliary, the single parent of a school-age childalso a New Jersey domiciliary whose daily care and supervision must be provided by someone other than his parent because the parent is in the military and cannot keep the child with him on a regular basis; as a consequence, the child's grandparents agreed to provide such care and supervision on a temporary basis until alternative arrangements could be made. Clearly, these are circumstances that might ordinarily have shifted A.D.S.'s entitlement to attend school (at least for a time) to the grandparents' district pursuant to N.J.S.A. 18A:38-1(b), as it did in East Brunswick. In this case, however, because the grandparents reside in Pennsylvania, reading the statute to conclude that A.D.S. must be educated as an "affidavit"[4] student effectively places him outside the purview of New Jersey law; so that, instead of acting to A.D.S.'s benefit, the law would then work to deprive him (and petitioner) of their rights as New Jersey citizens for no reason other than that petitioner's *408 parentswho offered to assist their suddenly widowed son with the care of his adopted childhappen to live across the state border. Surely the statute and its implementing rules do not contemplate such an unjust result, or one so contrary to the purpose of the law, and the Commissioner declines to so interpret them.
The Board appealed the Commissioner's decision to the State Board, which affirmed the decision for the reasons expressed by the Commissioner. The present appeal followed.
On appeal, the Board presents the following points for our consideration:
POINT A
THE STATE BOARD ERRED BY AFFIRMING THE COMMISSIONER'S DECISION THAT MARGATE CITY IS RESPONSIBLE FOR THE EDUCATION OF A.D.S.
POINT 1
THE STATE BOARD ERRED BY AFFIRMING THE DECISION OF THE COMMISSIONER WHICH IGNORES AND CONTRAVENES PRECEDENTS AND REGULATIONS GOVERNING DETERMINATION OF EDUCATIONAL RESPONSIBILITY.
POINT 2
THE STATE BOARD ERRED BY AFFIRMING THE COMMISSIONER'S DECISION WHICH INCORRECTLY CONCLUDED THAT A.D.S.'S DOMICILE DOES NOT FOLLOW THE DOMICILE OF HIS GRANDPARENTS.
POINT 3
THE STATE BOARD ERRED BY AFFIRMING THE COMMISSIONER'S DECISION WHICH INCORRECTLY CONCLUDED THAT THE FUNDAMENTAL PURPOSE OF THE STATUTE AND ITS IMPLEMENTING RULES REQUIRE A DETERMINATION THAT [THE BOARD] HAS EDUCATIONAL RESPONSIBILITY FOR A.D.S.
POINT 4
THE STATE BOARD OF EDUCATION ERRED BY AFFIRMING THE COMMISSIONER'S DECISION WHICH CREATED A NEW RULE OF GENERAL APPLICATION REGARDING DETERMINATION OF EDUCATIONAL RESPONSIBILITY WITHOUT NOTICE AND COMMENT RULEMAKING.
POINT 5
THE STATE BOARD ERRED BY AFFIRMING THE DECISION OF THE COMMISSIONER WHICH INCORRECTLY CONCLUDED THAT [PETITIONER] IS DOMICILED IN MARGATE.
Our standard of review of a final administrative agency decision is quite limited. Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963). We accord a strong presumption of reasonableness to such decisions and do not substitute our judgment for the wisdom of agency action if that action is statutorily authorized and not arbitrary or unreasonable. Bd. of Educ. of Englewood Cliffs v. Bd. of Educ. of Englewood ("Englewood I"), 257 N.J.Super. 413, 456, 608 A.2d 914 (App.Div.1992), aff'd, 132 N.J. 327, 625 A.2d 483, cert. denied, 510 U.S. 991, 114 S.Ct. 547, 126 L.Ed.2d 449 (1993). As long as the agency decision is contemplated under its enabling legislation, the action must be accorded a presumption of validity and regularity. Ibid.
The relationship between the findings and conclusions leading to a recommendation from an ALJ and the final decision reached by the Commissioner is set forth *409 in the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -24, which states in pertinent part:
A recommended report and decision which contains recommended findings of fact and conclusions of law and which shall be based upon sufficient, competent, and credible evidence shall be filed... with the agency in such form that it may be adopted as the decision in the case ... The head of the agency, upon a review of the record submitted by the administrative law judge, shall adopt, reject or modify the recommended report and decision.... In reviewing the decision of an administrative law judge, the agency head may reject or modify findings of fact, conclusions of law or interpretations of agency policy in the decision, but shall state clearly the reasons for doing so.... In rejecting or modifying any findings of fact, the agency head shall state with particularity the reasons for rejecting the findings and shall make new or modified findings supported by sufficient, competent, and credible evidence in the record.
[N.J.S.A. 52:14B-10(c).]
At the outset, the Commissioner accepted the factual findings of the ALJ that Margate is petitioner's domicile. We are satisfied there is substantial credible evidence in the record to support this finding and discern no basis to conclude otherwise. In Re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422, 945 A.2d 692 (2008) (stating that "an appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence."); see also Campbell, supra, 39 N.J. at 562, 189 A.2d 712.
The Commissioner also agreed with the ALJ's legal conclusion that a child's domicile ordinarily follows that of his or her parent(s). Although we owe no special deference to the Commissioner's special interpretation of the law, Auletta v. Bergen Ctr. for Child Dev., 338 N.J.Super. 464, 470, 769 A.2d 1095 (App.Div.), certif. denied, 169 N.J. 611, 782 A.2d 429 (2001), we are in complete agreement with the Commissioner's interpretation of the law here. See Shim v. Rutgers, 191 N.J. 374, 399, 924 A.2d 465 (2007) (noting that New Jersey has consistently held that the domicile of the child follows that of the parent); see also P.B.K. v. Bd. of Educ. of the Borough of Tenafly, 343 N.J.Super. 419, 427, 778 A.2d 1124, (App.Div.2001) (stating that in the context of a free public school education, the domicile of a child is that of the parent, custodian or guardian).
Thus, the sole issue before us is whether the Commissioner, in finding that A.D.S. is domiciled in Margate rather than Yardley, Pennsylvania, misapplied the law or otherwise acted arbitrarily and unreasonably. We have carefully considered the arguments in light of the record and applicable legal principles and find no such misapplication of the law, or arbitrary or unreasonable action here.
N.J.A.C. 6A:22-2.1(b) requires school districts to adopt written policies and procedures related to student residency and to incorporate Department of Education (DOE) regulations pertaining to student residency into each district's policies and procedures. Moreover, in doing so, "a district board of education shall construe the provisions" of DOE regulations governing student residency "liberally so as to effectuate the right of students to a free public education." Ibid. In our view, this is precisely what the Commissioner did. She found that the mere fact that A.D.S. had been living with his grand-parents *410 provided no basis to depart from the general principle that "a child's domicile is normally that of his or her parents." Somerville Bd. of Educ., supra, 332 N.J.Super. at 12, 752 A.2d 793. The record supports this legal conclusion.
The Board argues that the Commissioner's decision did not properly apply N.J.A.C. 6A:22-3.1(a)(1) because a proper application of this regulation requires a finding that A.D.S. was "living" with his grandparents in Yardley, Pennsylvania. We disagree.
N.J.A.C. 6A:22-3.1(a)(1) provides that students "over five and under 20 years of age" are "eligible to attend school in a district if the student is domiciled within the district" and sets forth various living arrangements from which a student's domicile may be established, including:
1. A student is domiciled in the school district when he or she is living with a parent or legal guardian whose permanent home is located within the school district. A home is permanent when the parent or guardian intends to return to it when absent and has no present intent of moving from it, notwithstanding the existence of homes or residences elsewhere.
However, the above referenced regulation does not define the word "living." Nor is "living" defined under the general definitions set forth in Chapter 22 of Title 6A. See N.J.A.C. 6A:22-1.2. In the absence of a special meaning, "the words in a [regulation] are to be given their ordinary and well understood meaning." State v. Ferencsik, 326 N.J.Super. 228, 231, 741 A.2d 101 (App.Div.1999). Moreover, the court must afford a construction to the word "living" which considers it in the context of the regulation, "ascribing to [it] a commonsense meaning which advances the legislative purpose." Voges v. Borough of Tinton Falls, 268 N.J.Super. 279, 285, 633 A.2d 566 (App.Div.1993), certif. denied, 135 N.J. 466, 640 A.2d 848 (1994).
Webster's definition of living includes "a manner or style of life." Webster's II New College Dictionary 657 (3d ed. 2005). In this regard, A.D.S.'s "manner or style of life" is that of a military dependent whose father, in the space of five years following enlistment, received five different assignments that took him to three posts in the United States, one in Europe, and one in the Middle East. This is the "manner or style of life" for those, such as A.M.S., who elect, on a full-time, active duty basis, to serve in our nation's armed forces. The dependents of these military persons must also adopt this "manner or style of life" and adjust their lives accordingly. This adjustment may include relocating with the service member to some locations, as the family did here prior to A.B.'s death. Alternatively, this adjustment may involve other living arrangements that physically separate the family from the service member, as were the circumstances here as well.
N.J.S.A. 18A:38-3(b) expressly provides that children of military guardspersons and reservists may continue to attend schools in the district where they previously resided when their parent(s)' mobilization required them to relocate out of the district. While this legislation did not extend to full-time active duty service members, the omission of this category of military persons should not be construed as the Legislature's intent to deprive children of full-time active duty personnel of a free public education simply because their parent(s), as full-time career service members, have no ability to control their assignment locations. Roxbury, supra, 6 N.J. Tax at 77. Rather, in the absence of express legislation or regulation to the contrary, we deem it appropriate, as did the Commissioner, *411 to look to common law principles of domicile to determine the domicile of A.D.S. Ibid.
The difference between an active duty person who has established domicile in New Jersey and that of a guardsperson or reservist domiciled in New Jersey is the duration of the active duty. In the latter case, the active duty status is temporary and it is therefore contemplated that once deactivated, the guardsperson or reservist will return to his or her domicile and resume civilian life, except for weekend drills each month. On the other hand, the full-time active duty member may not permanently return to his or her domicile until completion of the enlistment obligation, and if a career service member, that could mean not until at least twenty years later. In either case, however, both categories of servicepersons have established domicile in New Jersey. Thus, while N.J.S.A. 18A:38-3(b) expressly addresses the residency status for children of guardspersons and reservists, its silence as to active duty persons and their children simply compels consideration of common law principles to determine the residency status of a full-time, military dependent student. In our view, any other interpretation creates an inequity we are certain our Legislature did not intend.
The Commissioner acknowledged that in most cases where a child is living with a caretaker for a legitimate family or economic hardship, that child will likely seek to attend school in the caretaker's district rather than the district of domicile, as was the case in East Brunswick.[5] The Commissioner also noted that this presumption will not hold true in all cases and should not be used to deprive a student of the ability to attend a school in a location other than the domiciled district. We are therefore convinced the Commissioner properly applied common law principles governing domicile to the "unique" factual circumstances present here.
We do not agree with the Board's contention that the Commissioner's decision reflects rule-making contrary to the Court's decision in Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 478 A.2d 742 (1984). There, the Court found that the Division of Taxation Director's adoption of an audience share method to assess taxes against an out-of-state corporation that owned out-of-state television and radio stations was impermissible rule-making. Id. at 338, 478 A.2d 742. The Court noted that the decision "did not itself arise from the development of an evidential record that characterizes adjudication." Id. at 336, 478 A.2d 742. Here, however, there is no question that the Commissioner's decision arose from a contested adjudicatory proceeding. Moreover, the Commissioner made clear that her decision was fact specific to the unique circumstances of petitioner.
Additionally, unlike Metromedia, supra, the Commissioner's legal interpretation of domicile was consistent with common law principles establishing domicile. Therefore, her decision did not effect "a material change in existing law," another consideration in any determination of whether agency findings are rule-making or adjudicatory. Id. at 330, 478 A.2d 742.
*412 In short, the Commissioner's decision did not create a new rule. See, e.g., N.J.S.A. 52:14B-2(e) (defining "administrative rule" as not including "agency decisions and findings in contested cases.") Rather, her decision recognized, as did the A.L.J.'s initial decision, that the express statutory protections afforded to children of national guardspersons and reservists do not expressly extend to children of full-time active duty servicepersons. Consequently, she applied the plain language of N.J.S.A. 18A:38-1(a) to conclude that in the absence of express language to the contrary, on the facts before her and applying common law principles of domicile, there was no reason to depart from the presumption that a child should be educated in the district in which his or her parent is domiciled.
As long as petitioner continues to serve his country in the military in different assignments throughout the country and elsewhere, and if he does not change his domicile, the status quo will continue. This fact of military life should not alter his established domicile as that of Margate. See, e.g., Roxbury, supra, 6 N.J. Tax at 77-78 (holding defendant's physical presence in New Jersey was not a significant factor in establishing his domicile, since his membership in the armed forces afforded him "little control over the length of time he may spend in any jurisdiction before being transferred elsewhere"); see also Stifel v. Hopkins, 477 F.2d 1116, 1126 (6th Cir.1973) (citing Joseph Story's rule that "residence in a place by constraint or involuntarily will not give the party domicile there," Hogan, Joseph Story's Essay on "Domicile," 35 B.U.L.Rev. 215, 221 (1955)); Dicks v. Dicks, 177 Ga. 379, 170 S.E. 245, 250 (1933) (ruling defendant's assignment at an army base did not, as a matter of law, change his domicile).
To summarize, we are satisfied there is substantial, credible evidence in the record to support the determination that A.M.S. is domiciled in Margate. We are also satisfied that in the absence of express legislation or regulation to the contrary, the Commissioner's consideration of common law principles to determine that A.D.S., like his father, is domiciled in Margate, does not constitute impermissible rule-making. Consequently, the Commissioner properly concluded that the Board is required to continue A.D.S.'s enrollment and to take such steps as are necessary to provide him with the free public education to which he is entitled by law.[6]
Affirmed.
NOTES
[1] DOD Form 2058 is the State of Legal Residence Certificate data required by the Privacy Act of 1974, 5 U.S.C.A. § 552a. The information on the form establishes the legal residence of military personnel for purposes of withholding state income taxes from military pay. Available at http://www.dtic.mil/whs/ directives/infomgt/forms/eforms/dd2058.pdf.
[2] Petitioner has not appealed this dismissal.
[3] N.J.S.A. 18A:38-3(b) provides:

Any person not resident in a school district, if eligible except for residence, and if that person previously was a resident of the district, shall be admitted to the schools of the district without payment of tuition if that person's parent or guardian is a member of the New Jersey National Guard or a member of the reserve component of the armed forces of the United States and has been ordered into active military service in any of the armed forces of the United States in time of war or national emergency, resulting in the relocation of the student out of the district. A school district admitting a student pursuant to this subsection shall not be obligated for transportation costs.
[4] An affidavit student is a student living with a caretaker in a district other than the school district of his or her parents' domicile and (1) the living arrangement is due to family or economic hardship, and not for the sole purpose of attending public school in the caretaker's district; and (2) the caretaker provides full support, gratis, to the student. See N.J.S.A. 18A:38-1(b); see also N.J.A.C. 6A:22-3.1(a)2.
[5] In East Brunswick, the question of the student's domicile was only indirectly before the court. 308 N.J.Super. at 105, 705 A.2d 766. The issue before the court was whether the school district's action for tuition reimbursement from the plaintiff implicated attorneys' fees pursuant to the fee-shifting provisions of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C.A. § 1400 to -1491o, specifically § 1415(e)(4)(B) (1986), as amended by 20 U.S.C.A. § 1415(i)(3)(B) (Supp.1997). Ibid.
[6] In a footnote, the Commissioner acknowledged that because A.D.S. is disabled and in need of supervision, which neither his parent nor grandparents could provide, he is "unlikely actually to live in Margate notwithstanding his entitlement to be educated there...." With these circumstances evident, the Commissioner stated that her decision "is not intendedand should not be construed as a requirement for, or endorsement of, a residential educational placement at Margate's sole expense...." She concluded that the appropriate educational program and the extent of Margate's financial responsibility for such program would be determined in accordance with the appropriate statutory and regulatory requirements.