**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2381-18T2

BOARD OF EDUCATION
OF THE TOWNSHIP OF MINE
HILL, MORRIS COUNTY,

     Petitioner-Appellant

v.

BOARD OF EDUCATION
OF THE TOWN OF DOVER,
MORRIS COUNTY,

     Respondent-Respondent.

_____

Argued February 12, 2020 – Decided March 10, 2020

Before Judges Koblitz, Whipple and Gooden Brown.

On appeal from the New Jersey Commissioner of Education, Docket No. 60-3/17.

Marc Howard Zitomer argued the cause for appellant (Schenck Price Smith & King, LLP, attorneys; Marc Howard Zitomer, on the brief; Sandra Calvert Nathans, on the briefs).

John E. Croot argued the cause for respondent Board of Education of the Town of Dover (Adams Gutierrez & Lattiboudere, attorneys; John E. Croot, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Commissioner of Education (Jaclyn Michelle Frey, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Petitioner Board of Education of the Township of Mine Hill appeals from a January 14, 2019 final agency decision by the New Jersey Commissioner of Education, Dr. Lamont O. Repollet, denying approval of its settlement agreement with respondent Board of Education of the Town of Dover. In the settlement agreement, the parties sought a modification of their sending-receiving relationship so that petitioner's seventh and eighth grade students would be educated in the Mine Hill School District (Mine Hill) but return to the Dover School District (Dover) for high school. No change to the parties' relationship as to ninth through twelfth graders was sought. If approved, the transition phase would have begun the following school year.

The Commissioner denied modification of the parties' relationship due to the substantial negative effect on the racial composition of Dover Middle School and the education of the current seventh grade Mine Hill students who would have to transfer to Mine Hill for eighth grade, only to return to Dover the

2

following year for high school. Given our discretionary standard of review, we affirm.

Since 1963, petitioner and respondent have had a sending-receiving relationship in which Mine Hill students in grades seven through twelve are educated in Dover. As the sending district, petitioner pays respondent for each student. In 1998, petitioner sought a limited severance of its sending-receiving relationship to allow its seventh and eighth graders to be educated in Mine Hill. The Commissioner denied the petition.

Pursuant to N.J.S.A. 18A:38-13, which requires "the district seeking to sever the relationship . . . [to] prepare and submit a feasibility study, considering the educational and financial implications . . . the impact on the quality of education . . . and the effect on the racial composition . . . of the [sending and receiving] districts," in September 2016, petitioner commissioned Consulting Services Associates (CSA) to perform a study. Using 2015-2016 data, CSA reported that the proposed modification would have caused a 4.2% increase in the proportion of minority students at Dover Middle School in seventh and eighth grade, from 91.1% to 95.3% minority. CSA concluded that "there would be no significant negative impact to educational programs, racial/ethnic

balances, enrollments, or finances in either district should the sending-receiving relationship that currently exists . . . be modified."

After the results of the study were released to the public in January 2017, petitioner conducted a survey of both districts' constituents to gauge their interest in altering the sending-receiving relationship. Of the 164 people who responded, seventy-two percent stated they favored seventh and eighth grade Mine Hill students being educated in their own district.

In March 2017, petitioner filed a petition of appeal requesting the Commissioner's approval to modify the sending-receiving relationship as to seventh and eighth graders only. The matter was transmitted to the Office of Administrative Law as a contested case, but before it could be heard on the merits, the parties reached a settlement. The Administrative Law Judge (ALJ) issued an initial decision approving the settlement agreement, in which the parties agreed that beginning in the 2018-2019 term, seventh and eighth grade Mine Hill students would be educated in their own district.

The Commissioner rejected the ALJ's initial decision due to the parties' failure to follow procedural requirements. Pursuant to N.J.A.C. 6A:3-6.1, he directed them to allow for a public comment period on the agreed-upon proposal. Of the seventeen comments the Commissioner received, three individuals

favored the change and fourteen opposed it. The opponents were primarily concerned with the one-year transition plan. Petitioner agreed with those concerns and, although contrary to the terms of its settlement agreement, requested the Commissioner to impose a "phase-in transition over two school years instead of making the Mine Hill students, who currently attend Dover Middle School, return to the [Mine Hill] school for their [eighth] grade." It sought to delay implementation of the settlement agreement from September 2018 to September 2019. In contrast, respondent argued that "[t]here is no basis upon which to modify the terms of the settlement."

In May 2018, the Commissioner requested the parties to submit updated student data. After considering the feasibility study, the parties' submissions and settlement agreement, the public comments, and the updated data, he issued a final decision, finding the racial impact unacceptable. He noted that implementing the settlement agreement in the upcoming school year was "impractical and would hinder the continuity of education" of the current seventh graders who would have to transition to Mine Hill for eighth grade before returning to Dover for high school. He denied "the parties' proposed settlement agreement . . . due to the substantial negative impact severance would have on the racial composition of Dover [Middle School] and the substantial

negative impact that the transition plan would have on the quality of the education for Mine Hill's seventh grade class."

Our review of a final decision from an administrative agency is limited. In re Adoption of Amendments to Ne., Upper Raritan, Sussex Cty. & Upper Del. Water Quality Mgmt. Plans, 435 N.J. Super. 571, 582 (App. Div. 2014). "A court may reverse only if it 'conclude[s] that the decision of the administrative agency is arbitrary, capricious, or unreasonable, or is not supported by substantial credible evidence in the record as a whole.'" Ibid. (alteration in original) (quoting J.D. v. N.J. Div. of Developmental Disabilities, 329 N.J. Super. 516, 521 (App. Div. 2000)). We ask three questions in our limited review:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Id. at 583 (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

"We accord a strong presumption of reasonableness to such decisions and do not substitute our judgment for the wisdom of agency action if that action is

statutorily authorized and not arbitrary or unreasonable." A.M.S. ex rel. A.D.S. v. Bd. of Educ. of Margate, 409 N.J. Super. 149, 159 (App. Div. 2009). We are, however, not "bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Ardan v. Bd. of Review, 231 N.J. 589, 604 (2018) (quoting US Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012)). Nonetheless, we must give "great deference" to an agency's interpretation of a statute it is charged with enforcing. N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 549 (2012) (quoting N.J. Soc'y for the Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 385 (2008)).

When granting a change in designation or allocation, the Commissioner must consider "the effect on the racial composition of the pupil population of each of the districts." N.J.S.A. 18A:38-13. Our Supreme Court recognizes that "[s]tudents attending racially imbalanced schools are denied the benefits that come from learning and associating with students from different backgrounds, races, and cultures." In re Petition for Authorization to Conduct a Referendum on Withdrawal of N. Haledon Sch. Dist. from the Passaic Cty. Manchester Reg'l High Sch. Dist., 181 N.J. 161, 178 (2004). The Court has affirmed that a nine percent decrease in the overall white population of a regional high school district "was not a 'negligible impact.'" Id. at 164-65 (quoting In re Petition for

Authorization to Conduct a Referendum on the Withdrawal of N. Haledon Sch. Dist. from the Passaic County Manchester Reg'l High Sch. Dist., 363 N.J. Super. 130, 139 (App. Div. 2003)). The "precise point when a thorough and efficient education is threatened by racial imbalance" is, however, "not really possible to establish." Id. at 183.

The Commissioner found that of the 509 seventh and eighth grade students at Dover Middle School, forty-three students were from Mine Hill. Thirty-eight of the seventh and eighth graders were white: twenty-one from Dover and seventeen from Mine Hill. Relying on Board of Education of Englewood Cliffs v. Board of Education of Englewood, 257 N.J. Super. 413, (App. Div. 1992), aff'd 132 N.J. 327, cert. denied, 510 U.S. 991 (1993), the Commissioner determined that the loss of these seventeen white Mine Hill students amounted to a reduction of about three percent in the proportion of white students to the total school population, and a substantial forty-five percent gross reduction of white students at Dover Middle School in the 2017-2018 and 2018-2019 school years.

In Englewood Cliffs, our court affirmed the State Board's adoption of the ALJ's recommendation to deny the termination of the parties' sending-receiving relationship. 257 N.J. Super. at 422. The ALJ found that although the "drop in

8

the overall proportion of white students . . . would make a difference of 1.6%, seemingly a negligible amount," if severance was granted, the fifteen white students who would no longer attend the district out of a total of ninety-four white students presently in the district, constituted sixteen percent of the total population of white students. Id. at 439. The State Board explained, "[T]his [decrease] might not in itself constitute a substantial negative impact . . . . However, N.J.S.A. 18A:38-13 requires that any determination with respect to a requested change in designation must be based upon consideration of 'all the circumstances.'" Id. at 447. Given that "[a] loss of [forty-five] percent of the white population at Dover is significantly higher in magnitude than the [sixteen] percent loss" in Englewood Cliffs, the Commissioner found he could not approve a limited severance.

Although petitioner asserts this matter is distinguishable from Englewood Cliffs because, unlike here, the petitioner there was motivated by racial prejudice when seeking to terminate its sending-receiving relationship, our court has explained that "a particularized finding of intentional discrimination is not a prerequisite for state remedies for racial imbalance." Id. at 472. In relying on Englewood Cliffs, the Commissioner did not violate legislative policy, but

rather made a reasonable finding supported by substantial evidence from the record. See In re Adoption of Amend., 435 N.J. Super. at 582.

The Commissioner's finding was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2381-18T2