840 A.2d 979 (2004)
366 N.J. Super. 269
D.L. and Z.Y. on Behalf of Minor children T.L. and K.L., Petitioners-Appellants,
v.
BOARD OF EDUCATION OF PRINCETON REGIONAL SCHOOL DISTRICT, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted December 2, 2003.
Decided February 5, 2004.
D.L., appellant pro se.
Sills, Cummis, Radin, Tischman, Epstein & Gross, Newark, attorneys for respondent Board of Education of Princeton Regional *980 School District (Philip E. Stern, of counsel; Mr. Stern and Steven M. Fleischer, on the brief).
Peter C. Harvey, Attorney General of New Jersey, attorney for respondent Department of Education (Cindy Campbell, Deputy Attorney General, on the brief).
Before Judges PRESSLER, PARKER and COLEMAN.
The opinion of the court was delivered by PARKER, J.A.D.
Petitioners appeal from a decision of the State Board of Education affirming and adopting decisions of the Commissioner and Administrative Law Judge (ALJ), finding that petitioners' children attended Princeton public schools illegally from January 23, 2000 to April 6, 2001, and ordering them to pay $27,292.38 in tuition to the Princeton Regional School District for the period of ineligible attendance. We reverse.
The essential facts appear to be undisputed in that petitioners lived in Princeton from March 1995 until June 1998, when they moved to West Windsor and the children were transferred to that school district. In November 1998, petitioners listed the West Windsor house for sale and on December 20, 1999, contracted to purchase a condominium in Princeton. In January 2000, they returned the children to the princeton school district and closed on the Princeton condominium on February 29, 2000. The house in West Windsor did not sell, however, and petitioners owned both houses and spent time in each of them. At the hearing before the ALJ, petitioners presented bills for municipal taxes, homeowner's insurance, condominium association dues and utilities for the Princeton home to demonstrate that they were actually residing in Princeton during the time in question.
The Princeton attendance officer, Nicholas Cream, testified that he investigated the family and observed the West Windsor home on a number of occasions in March, April and June 2001. During the week of March 26, he observed the mother leave the West Windsor home at about 7:50 a.m. and drive the two children to the Princeton school on three occasions. From April 26 through April 31, he observed the mother leave the West Windsor residence at 8:00 p.m., taking the children to the Princeton house, where they spent the night. From June 1 to June 8, he observed the mother's car at the West Windsor residence during the day time on a number of occasions, and observed her leaving the West Windsor residence in the evening and taking the children to the Princeton home for the night. It was his opinion that the family "spent the majority of the time at their West Windsor residence."
The petitioner, D.L., testified that the family was, in fact, living in the two houses because they believed that "a lived-in house [in West Windsor] would sell quicker than an empty house." For a period of time in March and April 2000, D.L.'s parents were visiting from China and staying at the West Windsor house. When the West Windsor house did not sell, petitioners spent time there remodeling and redecorating it in an effort "to impress the buyer."
The ALJ was persuaded that the parties had not maintained Princeton as their domicile because they had not changed the addresses on their drivers' licenses or auto registrations and gave no testimony about the furnishings in the Princeton house, their social activities or the children playing with other children in the Princeton neighborhood. Although the ALJ did not doubt petitioners' "sincerity," he concluded *981 that they did not establish a permanent home in Princeton and had no intention of abandoning the West Windsor home. The Commissioner and State Board of Education agreed and affirmed.
Petitioners argue on appeal that the decision of the Board was arbitrary, capricious and not supported by the evidence. We agree. Our scope of review is limited to a determination of whether the Board's decision is "unreasonable, unsupported by the record or violative of the legislative will." Capodilupo v. Bd. of Ed. of W. Orange, 218 N.J.Super. 510, 515, 528 A.2d 73 (App.Div.), certif. denied, 109 N.J. 514, 537 A.2d 1300 (1987); Kletzkin v. Bd. of Ed. of Spotswood, 136 N.J. 275, 278, 642 A.2d 993 (1994); Thomas v. Bd. of Ed. of Morris Tp., 89 N.J.Super. 327, 332, 215 A.2d 35 (App.Div.1965), aff'd, 46 N.J. 581, 218 A.2d 630 (1966). We generally defer to credibility determinations made by the ALJ who had the opportunity to hear the testimony and observe the demeanor of the witnesses. See State v. Locurto, 157 N.J. 463, 470, 724 A.2d 234 (1999).
Pursuant to N.J.S.A. 18A:38-1(a), "[a]ny person who is domiciled within the school district" is entitled to a free education from that district. "If the superintendent or administrative principal of a school district finds that the parent or guardian of a child who is attending the schools of the district is not domiciled within the district..., the superintendent or administrative principal may apply to the board of education for the removal of the child." N.J.S.A. 18A:38-1(b)(2). The parents "shall have the burden of proof by a preponderance of the evidence" to prove domicile in the school district. N.J.S.A. 18A:38-1(b)(2).
"Domicile" is defined as "the place where [a person] has his [or her] true, fixed, permanent home and principal establishment, and to which whenever he is absent, he has an intention of returning." T.B.W. ex rel. A.W. v. Bd. of Ed. of the Township of Belleville, Essex County, Agency Dkt. No.l 159-5/96, 1998 WL 668678 (N.J. Adm. June 18, 1998). As the court noted in Collins v. Yancey, 55 N.J.Super. 514, 520-21, 151 A.2d 68 (Law Div.1959), a person may have several residences or places of abode, but only one domicile at a time. Id.
A student is domiciled in the district when he or she is living with a parent or legal guardian whose permanent home is located within the district. A home is permanent when the parent or guardian intends to return to it when absent and has no present intent of moving from it, notwithstanding the existence of homes or residences elsewhere.

[N.J.A.C. 6A:28-2.4(a)(1)(i).]
It is undisputed that petitioners owned houses in West Windsor and Princeton during the time in question. It is undisputed that they spent substantial time in both houses, sleeping in Princeton on all but three of the days on which the attendance officer made observationsand those three days were in March 2000, when D.L. testified that his parents were visiting from China and the family spent much of their time with them in the West Windsor house. Petitioners listed the West Windsor house for sale and even remodeled and redecorated in an effort to sell it. Nothing in the record indicates that the family intended to retain the West Windsor house or maintain permanent residence there. Indeed, the evidenceincluding the attendance officer's testimonyindicates that the family spent most of their time in Princeton, slept in Princetonexcept for three nightspaid taxes, utilities and association dues in Princeton and had every intention of making their permanent home in Princeton specifically *982 to enroll their children in the Princeton Regional School District.
Petitioners were not represented by counsel at the hearing, which explains, in part, their failure to give testimony regarding furnishings and social activities in Princeton. Obviously, that was not their principal focus. The fact that they had not yet changed the addresses on their drivers' licenses cannot be deemed dispositive in the face of the overwhelming evidence that they intended to and did, in fact, establish a permanent home and were domiciled in Princeton from February 29, 2000, when they closed on the Princeton house.
We are persuaded that petitioners demonstrated by a preponderance of the evidence that they were, in fact, domiciled in Princeton. Accordingly, we reverse and remand for a determination of the amount of tuition owed, if any, to the Princeton Regional School District for the period of time the children were enrolled in the district from January 2000 until February 29, 2000, when petitioners closed on the purchase of the Princeton home.
Reversed and remanded.