**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1095-17T1

PAULA MELNYK,

     Petitioner-Appellant,

v.

BOARD OF EDUCATION OF
THE DELSEA REGIONAL
HIGH SCHOOL DISTRICT,
GLOUCESTER COUNTY,

     Respondent-Respondent.

_____

Argued December 4, 2018 – Decided  December 17, 2018

Before Judges Haas and Mitterhoff.

On appeal from the New Jersey Commissioner of Education, Docket No. 161-7/15.

Hop T. Wechsler argued the cause for appellant (Selikoff & Cohen, PA, attorneys; Keith Waldman, of counsel and on the briefs; Hop T. Wechsler, on the briefs).

Andrew W. Li argued the cause for respondent Board of Education of the Delsea Regional High School District (Parker McCay, PA, attorneys; Andrew W. Li, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Commissioner of Education (Joan M. Scatton, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellant Paula Melnyk appeals from the October 12, 2017 final decision of the Commissioner of Education (Commissioner), adopting the initial decision of the Administrative Law Judge (ALJ), and concluding that respondent Board of Education of the Delsea Regional High School District (District) did not violate appellant's tenure rights when it terminated her extracurricular assignment as a teacher in the District's alternative education program. We affirm.

We begin by summarizing the applicable legal principles governing the issue presented in this appeal. A teaching staff member like appellant "is entitled to tenure if (1) she works in a position for which a teaching certificate is required; (2) she holds the appropriate certificate; and (3) she has served the requisite period of time." Spiewak v. Summit Bd. of Educ., 90 N.J. 63, 74 (1982). Pursuant to N.J.S.A. 18A:28-5(a), teaching staff members acquire tenure after employment by a board of education for:

(1) Three consecutive calendar years, or any shorter period which may be fixed by the employing board for such purpose; or

(2) Three consecutive academic years, together with employment at the beginning of the next succeeding academic year; or

(3) The equivalent of more than three academic years within a period of any four consecutive academic years.

"[T]enure is achieved in a specific 'position,' and the scope of the tenured position is initially limited by the 'certificate' the teaching staff member must hold to satisfy the prerequisite of qualifications for his or her employment." Nelson v. Bd. of Educ. of Old Bridge, 148 N.J. 358, 366 (1997) (quoting Ellicott v. Bd. of Educ., 251 N.J. Super. 342, 348 (App. Div. 1991)).  Thus, a teacher acquires title in a particular position for which he or she holds a certificate, rather than based on the specific assignments he or she performs while in that position.

In a long line of administrative decisions dating back over forty-seven years, the Commissioner has held that a teacher, already having tenure based upon his or her years of service in a particular position, may not also acquire separate tenure in an extracurricular assignment they might also perform if the teacher is not required to possess any certificate other than the one they already hold in their tenured position, and they receive a stipend for this assignment

which is not an "integral portion" of their salary for the tenured position. Dignan v. Bd. of Educ. of the Rumson-Fair Haven Reg'l High School, 71 S.L.D. 336, 343 (Comm'r of Educ. July 29, 1971), aff'd, 74 S.L.D. 1376 (State Bd. of Educ. Sept. 11, 1974), aff'd, 75 S.L.D. 1083 (App. Div. Oct. 10, 1975); see also Manley v. Bd. of Educ. of Old Bridge, 2005 N.J. AGEN LEXIS 664, (Nov. 4, 2005), adopted by the Commissioner, 2005 N.J. AGEN LEXIS 1053 (Dec. 19, 2005) (stating that "no tenure protections flow from extracurricular positions unless the position requires additional certification"). As the Commissioner held in Dignan:

> [A] board of education has the authority to assign and reassign teachers to extra-classroom curricular duties in addition to their regularly-scheduled classroom-instruction assignment and to pay such additional remuneration as it deems reasonable and appropriate therefore[.] . . . [A]bsent a requirement for a certificate other than that of a teacher, no tenure status accrues to such assignments, and they are renewed or discontinued at the discretion of the board.
>
> [Id. at 343.]

With these well-established, governing principles in mind, we turn to the specific, and undisputed, facts of this case. Since September 1991, the District has employed appellant as a full-time special education teacher. Appellant holds an Instructional Certificate with Teacher of the Handicapped and Elementary

A-1095-17T1

School Teacher endorsements.  Appellant is tenured in this position.  According to appellant's 2014-15 teacher's contract, her annual salary was $82,874.

In September 2002, the District assigned appellant to teach special education classes after her regular school day in an alternative education program known as "BookBinders," which the District offered in accordance with N.J.A.C. 6A:16-9.1 to -9.3.  Alternative education programs, like BookBinders, are "comprehensive educational program[s] designed to address the individual learning, behavior, and health needs of students who are not succeeding in the general education program or who have been mandated for removal from general education[.]"  N.J.A.C. 6A:16-1.3.  Appellant does not assert that the District required her to work in BookBinders; instead, it is clear from the record that her assignment was voluntary.

To participate in this extra assignment, appellant did not need any additional teaching certification; the Instructional Certificate with a Teacher of the Handicapped endorsement was all that was required.  The District paid appellant $20 per hour for the time she worked in BookBinders after school and in the evenings.[1]  With the exception of the 2009-10 school year during which she was "taking a break" from this voluntary assignment, appellant performed

_____

[1] Appellant taught English classes during this period.

these secondary duties until the end of the 2014-15 school year. At that time, the District assigned another teacher to teach English in the program on an hourly basis.

Appellant appealed the District's decision to replace her to the Commissioner, and alleged that she had achieved separate tenure in her BookBinders assignment, despite the fact that she was already tenured in her full-time teaching member assignment. Therefore, appellant argued that the District could not assign another teacher to work in the program after school in her place. The Commissioner transmitted the matter to the OAL as a contested case.

Because there was no dispute as to any of these material facts, the parties filed cross-motions for summary decision pursuant to N.J.A.C. 1:1-12.5. The ALJ framed the issue as "whether [appellant] separately acquired tenure in the alternative education teacher position, such that she is entitled to reinstatement, together with full back pay, benefits, and emoluments of the position with interest, retroactive to June 2015[?]"

In answering this question in the negative, the ALJ reviewed the Commissioner's prior decisions regarding extracurricular duties and assignments, including Dignan. She observed that an already tenured teacher

like appellant, who is assigned to an extracurricular position, does not have a right to tenure in that position because a board of education has the authority to assign and reassign teachers to extracurricular duties as it deems fit. Dignan, 71 S.L.D. at 343.

In determining that appellant was performing extracurricular duties when she worked in BookBinders after school for an hourly stipend, the ALJ stated:

> Traditionally, "extracurricular" is the word used to describe school programs designed to enhance the education of students outside of the classroom, or regular curriculum, such as the school newspaper or athletics. See Smith v. Bd. of Educ. of Paramus, 68 S.L.D. 62 (stating that "extracurricular or cocurricular activities comprise all those events and programs which are sponsored by the school and may reasonably be characterized as a supplement to the established program of studies in the classroom in order to enrich the learning and self-development opportunities of pupils"), aff'd, St[ate] Bd. of Educ. (Feb. 5, 1969).
>
> However, the definition of "extracurricular" also includes "lying outside one's regular duties or routine." Merriam-Webster Online Dictionary, "extracurricular," https://www.merriam-webster.com/. Thus, while [appellant] taught English inside a classroom during her BookBinders assignment, the assignment was extracurricular in the sense that it fell outside her usual duties as a special education teacher during regular school hours. Here, as in Dignan, . . . the position was extracurricular and did not require additional certification beyond [appellant's] teaching certificate. Accordingly, [appellant] was not separately entitled to tenure in the alternative education position.

7

In addition to the fact that appellant did not need an additional certification to participate in the extracurricular BookBinders program, appellant's $20 per hour remuneration for "her extracurricular service was established separately from her employment contracts." As the ALJ found,

> Nothing in [appellant's] contract as a special education teacher required her to participate in the alternative program. Instead, for the 2014-2015 school year, she received a salary of $82,874 for her teaching position in the general education program, and she received separate compensation of twenty dollars an hour for her extracurricular duty as an English teacher in the BookBinders program. Therefore, her compensation for her work in the alternative program was not an integral part of her contractual salary. . . . Consequently, as [appellant's] former position in the alternative program was neither engrafted onto her primary tenured position nor compensated as an integral part of her salary, [appellant] is not entitled to back pay or other compensation.

Accordingly, the ALJ concluded that appellant "did not acquire tenure rights in the BookBinders position because the assignment did not require a certificate separate from the one under which she acquired tenure in her teaching position and in the general education program and was extracurricular." Appellant filed exceptions to the ALJ's initial decision and, on October 12, 2017, the Commissioner adopted the ALJ's reasoning and concluded that appellant did

A-1095-17T1

not acquire tenure in the alternative education program position. This appeal followed.

On appeal, appellant again argues, as she unsuccessfully did before the Commissioner, that she had tenure in her "alternative program teaching position" and, therefore, the District was powerless to assign another teacher to work after school in the program. Based on our review of the record and applicable law, we are not persuaded by appellant's contention, and affirm substantially for the reasons articulated by the Commissioner. We add the following comments.

Our standard of review of administrative determinations by the Commissioner is limited. "[W]e will not reverse the determination of an administrative agency unless it is arbitrary, capricious or unreasonable, or is not supported by substantial credible evidence in the record as a whole." Kaprow v. Bd. of Educ. of Berkeley Twp., 131 N.J. 572, 591 (1993) (citing Dennery v. Bd. of Educ., 131 N.J. 626, 641 (1993)). We limit our review "to a determination of whether the [Commissioner's] decision is 'unreasonable, unsupported by the record or violative of the legislative will.'" D.L. v. Bd. of Educ. of Princeton Reg'l Sch. Dist., 366 N.J. Super. 269, 273 (App. Div. 2004) (quoting Capodilupo v. Bd. of Educ. of W. Orange, 218 N.J. Super. 510, 515 (App. Div. 1987)).

We are not bound by an administrative agency's legal opinions. Levine v. State Dep't of Transp., 338 N.J. Super. 28, 32 (App. Div. 2001) (citing G.S. v. Dep't of Human Servs., Div. of Youth & Family Servs., 157 N.J. 161, 170 (1999)). Nonetheless, administrative decisions are cloaked with a "strong presumption of reasonableness." Newark v. Natural Res. Council, 82 N.J. 530, 539 (1980). Additionally, the "agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference." Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (citing In re Progressive Cas. Ins. Co., 307 N.J. Super. 93, 102 (App. Div. 1997)).

"The delegation of regulatory and administrative responsibility over tenure to the [Commissioner] is based on the complexity and specialized nature of the subject of teacher tenure." Dennery, 131 N.J. at 637 (citing Ellicott, 251 N.J. Super. at 350). Thus, our Supreme Court has cautioned that "the courts cannot supplant educators; they are not at liberty to interfere with regulatory and administrative judgments of the professionals in the field of public education unless those judgments are palpably arbitrary or depart from governing law." Id. at 643.

Applying these standards, we discern no grounds to overturn the Commissioner's reasoned decision. The salient facts of this case were undisputed and, in light of the governing law, the Commissioner's legal conclusions are unassailable.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1095-17T1