**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2085-17T3

M.K. and M.K., on behalf of
minor child, M.K.,

 Petitioner-Appellant,

v.

BOARD OF EDUCATION OF
THE BRIDGEWATER-RARITAN
REGIONAL SCHOOL DISTRICT,
SOMERSET COUNTY,

 Respondent-Respondent.

_____

Submitted May 30, 2019 – Decided July 5, 2019

Before Judges Alvarez and Reisner.

On appeal from the Commissioner of Education, Docket No. 363-12/15.

Pasquale Marago, attorney for appellants.

The Busch Law Group LLC, attorneys for respondent Bridgewater-Raritan Regional School District Board of Education (Elizabeth Farley Murphy and Nicholas Celso, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Commissioner of Education (Joan M. Scatton, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

M.K. (Tom) and M.K. (Mary), on behalf of their son M.K. (Sam), a minor, appeal from the Commissioner of Education's June 5, 2017 final agency decision adopting without modification the initial decision of an Administrative Law Judge (ALJ). The ALJ found that Sam was not domiciled in the Bridgewater-Raritan Regional School District during the 2015-2016 school year and yet attended public school in the District. Based on that determination, the Commissioner ordered Tom and Mary to pay $38,329.20 for tuition costs to defendant, the Board of Education of the Bridgewater-Raritan Regional School District. We now reverse and remand.

The appeal began after the Bridgewater-Raritan Regional Board of Education finance/facilities/transportation committee held a hearing and ruled that Sam was not domiciled in the District, and should be disenrolled and pay tuition costs of "$212.94 for each day [the] child attended school during the ineligible period." Tom and Mary appealed to the Commissioner, who transferred the matter to the Office of Administrative Law to be heard as a contested case. N.J.S.A. 52:14B-1 to -15; N.J.S.A. 52:14F-1 to -13. The ALJ

decided the matter based on his review of some documentation and his credibility rulings. He found the school's attendance officer to be very "credible and persuasive[,]" while Tom and Mary, and Tom's parents, were incredible witnesses.

The family testified that Tom, Mary, and Sam resided with Tom's parents in Bridgewater in a basement apartment where they had lived for years. The school's attendance officer conducted surveillance on sixty days over the course of one and a half school years. On thirty-five occasions, he observed the mother and the minor child at Mary's mother's home in South Bound Brook, a separate school district. On each occasion, Mary drove the child to school in Bridgewater. On at least two occasions, the investigator saw Mary pick Sam up from school and take him to the South Bound Brook residence. He did not conduct surveillance at the Bridgewater residence. The investigator never saw the child at South Bound Brook when he surveilled the home in the summer.

Two family vehicles registered in Mary's name are listed at the South Bound Brook address, as is a rental agreement for a storage unit. Mary claimed her mother co-signed the loan for those vehicles, and thus her mother's address in South Bound Brook had to be given. She also said her mother paid for the storage unit rental, and she therefore gave her mother's address.

3

Tom and Mary proffered documents from 2015 listing Mary's address in Bridgewater, including: Mary's driver's license, her food stamp allotment, a vaccination certificate for the family pet as well as a reminder from the vet that the animal was due for another booster, a life insurance certification, bank statements, and insurance identification cards for a pickup truck and Mazda. Mary testified that she and Tom file their returns with the IRS listing the Bridgewater address. They submitted letters from neighbors in Bridgewater and South Bound Brook stating that Mary lives in Bridgewater.

During the course of his testimony, Tom said Sam spent his evenings after school at Bridgewater with him, engaging in typical every day after-school activities, and went to bed there. Mary frequently would not be in the house, however, when he awakened during the night, which would cause the child to have an anxiety attack. Sam's struggles with the condition were verified by a letter from a pediatric psychiatrist. When the child became anxious and upset, either Mary would pick up the child and return to South Bound Brook, or Tom would drive him over. Tom's father claimed he too would drive the child to South Bound Brook.

Mary started staying overnight in South Bound Brook mainly because her mother suffered from life-threatening pulmonary diseases that often necessitated

4

someone's presence at night, and she had a very elderly grandmother at a different South Bound Brook address who also required her assistance. Mary said she started keeping the child with her overnight, and that the child was with her in South Bound Brook on weekends when school was not in session.

The ALJ concluded the family concocted this story to avoid Sam's disenrollment in Bridgewater. He found it inherently suspect that parents of a child suffering from severe anxiety and behavioral struggles would add to his stress by frequently transporting him from his home in the middle of the night to the home of his ailing grandmother. Thus the ALJ decided that Tom and Mary failed to meet their preponderance of the evidence burden of proof.

We do not question the ALJ's judgment that the parents' and the in-law's testimony was unreliable. We do question his ultimate conclusion, however, that the testimony and the attendance investigator's observations established that Sam was domiciled outside of the District in the 2015-2016 term.

The ALJ made no mention of N.J.A.C. 6A:22-3.1(a)(1). That regulation provides that a student is considered domiciled in the school district in which the parent or guardian is domiciled. The ALJ made no findings with regard to Tom's statement that the child lived with him in Bridgewater. Nor did the ALJ in any fashion consider whether Mary intended to establish a permanent abode

A-2085-17T3

in South Bound Brook or was there merely to temporarily assist her mother and grandmother, taking the child with her. A temporary relocation with the child does not necessarily mean that the child's domicile changed. The regulations embody the principle that a minor child is domiciled where the parent is domiciled. P.B.K. v. Bd. of Educ. of Borough of Tenafly, 343 N.J. Super. 419, 427 (App. Div. 2001).

We note Tom's testimony that he spent some time in a drug rehabilitation facility, and Mary's testimony about her mother's serious illness. Given the family's situation, including a father struggling with drug addiction, and a mother struggling with responsibilities for an ailing parent and grandparent, it is legally possible that she and the child could have been found to have had two simultaneous residences, although only one domicile. See D.M. v. Bd. of Educ. of Princeton Reg'l Sch. Dist., 366 N.J. Super. 269, 274-75 (App. Div. 2004). Because of her life circumstances, Mary may well have been temporarily living in two residences without intending to make her mother's home her domicile. The real question is not where Sam resides, but where he is domiciled. And that question is answered by examining where Mary and Tom are domiciled. See N.J.A.C. 6A:22-3.1(a)(1). The investigator's statements that over the course of 270 school days he observed Sam at the South Bound Brook residence thirty-

6

five times is insufficient to decide the matter. The investigator never surveilled mother and child at the Bridgewater residence.

The ALJ's skepticism was well-grounded. But given the peculiar facts here, there was simply insufficient evidence in the record for a determination of domicile. Accordingly, we remand the matter for a further hearing to clarify the issue. We express no view as to the ultimate outcome.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2085-17T3